# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-905


**SOLA COMMUNICATIONS, INC.**

**VERSUS**

**TONY BAILEY**


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20026140
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

### MARC T. AMY
### JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Ezell, J., concurs and assigns written reasons.**

**Michael Dean Hebert**
**Hebert Law Frim**
**Post Office Box 3723**
**Lafayette, LA 70502**
**(337) 291-2500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     Tony Bailey

**Randal Paul McCann**
**Post Office Box 90663**
**Lafayette, LA 70509**
**(337) 235-1515**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     Sola Communications, Inc.

AMY, Judge.

The plaintiff employer filed a petition for an injunction, asserting the validity of a non-competition clause entered into by the defendant, a former employee. The defendant filed a motion for summary judgment, alleging that the clause was ineffective. The trial court granted the summary judgment. The employer appeals. For the following reasons, we affirm.

## Factual and Procedural Background

At issue in this case is the validity of a non-competition agreement entered into between the plaintiff, Sola Communications, Inc., and the defendant, Tony Bailey. The agreement was entered into in August 2000 when the Employee Acquisition Company, LLC, an employee group of which Mr. Bailey was a part, purchased Sola from its original owner. At the time of the group's purchase of Sola, Mr. Bailey received an 8% interest. In turn, Mr. Bailey paid $800, became a personal guarantor, and signed a non-competition agreement.[1] Following the employee group's

---

[1]The non-competition agreement, provides, in part:

### NON-COMPETITION AGREEMENT

**THIS NON-COMPETITION AGREEMENT** ("Agreement") is made and entered into as of August 1, 2000, by and between **TONY J. BAILEY** ("Employee") and **SOLA COMMUNICATIONS, INC.**, a Louisiana corporation ("Company").

### WITNESSETH:

**WHEREAS**, Employee is an employee of Company; and

**NOW, THEREFORE**, for and in consideration of the premises, and the consideration, agreements, mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and adequacy of which are forever acknowledged and confessed, the parties hereto covenant and agree as a material part of the Employment Agreement as follows:

**I.    COVENANT NOT TO COMPETE**

Employee recognizes that (i) Company's employment of Employee is induced because of the covenants and assurances made by Employee hereunder; (ii) the covenant not to compete of Employee is necessary to ensure the continuation of the business of Company should Employee terminate his employment with Company; and (iii) irreparable harm and damage will be done to the business of Company in the event that Employee competes with Company within the area or areas specified in Schedule 1. For purposes of this Agreement, the "business of Company" shall mean

acquisition of Sola, Mr. Bailey served as Vice President of Operations until July 2002, when his employment was terminated by President Gordon Rice.

The instant matter arose when Mr. Bailey was hired as a Project Manager on October 7, 2002, by Jelec USA, Inc., a business involved in fire and gas detection systems and alarm/paging systems. On November 26, 2002, Sola sought enforcement of the non-competition agreement, filing a "Petition for Declaratory Judgment and Rule to Show Cause to Why Sola Communications, Inc. is Not Entitled to Preliminary and Permanent Injunctive Relief." Mr. Bailey responded to the petition and filed an Exception of No Cause of Action and Motion for Summary Judgment.

At the hearing on the request for the preliminary injunction, the exception of no cause of action, and motion for summary judgment, Mr. Bailey argued that the non-competition agreement was invalid due to the Louisiana Supreme Court's decision in *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294. Sola asserted that the matter was distinguishable from the supreme court

---

a service company specializing in the operation of radio communications, sales and service of home security systems, key systems, mobile telephones, two-way radios, analog and digital microwave equipment, cellular equipment, marine radio systems, navigational aids, fire and gas detection systems, satellite communication systems, design, installation and maintenance of SCADA (Supervisory Control and Data Acquisition) systems, sales and installation of communication towers and antennae, and other related telecommunications services. *Therefore, in consideration of these premises, and as an inducement to consummate the transactions contemplated herein, Employee hereby agrees that during the term of his employment with Company and for a period of two (2) years following his termination of employment with Company, Employee will not directly or indirectly, in any capacity, own, manage, operate, control, participate in the management or control of, be employed by, consult with, receive any remuneration from or maintain or continue any interest whatsoever in, any enterprise, whether private or otherwise, in competition with the Company's business within the Louisiana Parishes described on the attached Schedule I*; provided that nothing contained herein shall be deemed to prohibit Employee from investing in stock or securities of a publicly-held business which is in any line of business in competition with the Company's business; further provided, however, that the securities of such business are traded on a national or regional securities exchange, or on an over-the-counter market, and provided further that the holdings of Employee and his immediate relatives do not amount to more than five percent (5%) of the fair market value of all the issued and outstanding stock and securities of such business in the aggregate.

(Emphasis added.)

2

jurisprudence. The trial court found in favor of Mr. Bailey, granting the motion for summary judgment and denying the exception of no cause of action and Sola's request for a preliminary injunction.

Sola appeals, assigning the following as error:

1.      The trial court erred by granting the Motion for Summary Judgment when it refused to view a distinction between the facts relevant to Sola and Tony Bailey and the facts which give rise to *SWAT 24 of Shreveport Bossier, Inc. v. Bond*.

2.      Pursuant to Act No. 428 of the 2003 Regular Session, *SWAT 24 of Shreveport Bossier, Inc. v. Bond* has been legislatively overruled and the decision made by the trial court is now in error.

## Discussion

*Standard of Review*

Summary judgments are provided for by La.Code Civ.P. art. 966(C)(1), which instructs that "[a]fter adequate discovery or after a case is set for trial, a motion [for summary judgment] which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted." An appellate court considers a trial court's disposition of a motion for summary judgment *de novo*. *Shelton v. Standard/700 Assoc.*, 01-0587 (La. 10/16/01), 798 So.2d 60. Considering this standard, we observe that the instant motion for summary judgment is not one concerned with the presence, or lack thereof, of genuine issues of material fact. Instead, the focus is on whether the relatively uncontested facts entitle the movant, Mr. Bailey, to judgment as a matter of law.

*La.R.S. 23:921*

Central to our analysis of this matter is La.R.S. 23:921, which regulates non-competition agreements. At the time of the events at issue, the statute provided, in part:

A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.

(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

B. Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.

C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from *carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.* An independent contractor whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

(Emphasis added.)

Sola advances two theories under which the above legislation does not prohibit enforceability of the non-competition agreement entered into with Mr. Bailey. First, it asserts that *SWAT 24*, 808 So.2d 294, the supreme court case relied upon by the trial

4

court and the dominate case on the subject, is inapplicable to this non-competition agreement. In particular, it argues that, in the present case, Mr. Bailey was not merely an employee of Sola, but that he was a shareholder and that he entered into the non-competition agreement in exchange for significant consideration as he acquired a new position and an increase in salary. Thus, Sola contends, any public policy concerns regarding the inequitable bargaining positions between employer and employee are not at issue as historically they were in the early cases involving non-competition agreements. Furthermore, Sola contends that legislation enacted subsequent to the trial court's ruling legislatively overruled *SWAT 24* and should be found applicable to the instant case.

*Applicability of SWAT 24*

We turn to the issue of whether Mr. Bailey's status as an interest holder renders this matter distinguishable from *SWAT 24*, 808 So.2d 294, wherein the supreme court considered the validity of a non-competition clause in which an employee agreed to neither engage in competition with the employer nor work as an employee of a competitor engaged in a similar business within designated parishes. At issue in *SWAT 24*, was whether the non-competition clause was within Paragraph C's exception to the general prohibition against non-competition agreements expressed in La.R.S. 23:921(A)(1). The employee argued that the clause did not fit within the narrow exception of La.R.S. 23:921(C) as it prohibited his working either as a competitor or as the employee of a competitor.

The supreme court reviewed Louisiana's historic disfavor of non-competition agreements between employers and employees, noting that the public policy restricting the agreements reflects "the desire to prevent an individual from contractually depriving himself of an ability to support himself and consequently

5

become a public burden." *SWAT* 24, 808 at 299. In resolving the issue of whether

Paragraph C permits an exception to the rule that applies to both subsequent

employment as a competitor *and* employee of a competitor, it noted that the courts of

appeal had resolved the question differently. These varying results reflect the various

meanings possibly afforded to the phrase "carrying on or engaging in a business

similar to that of the employer" contained in Paragraph C.

In its consideration of the phrase, the supreme court considered the statute's

background and legislative history before the resolving the issue as follows:

> The Agreement specifies that Bond [the employee] was prohibited from directly or indirectly engaging in competition with SWAT in specified parishes for a period of two years. If this provision is construed *arguendo* to prohibit Bond only from engaging in competition with SWAT by forming his own competing business, it would fit within the exception provided for in La.R.S. 23:921(C) as discussed above. Conversely, if this provision is construed to prohibit Bond from accepting employment by one of SWAT's competitors, then it is overbroad and unenforceable. Construction of this restriction as anything other than prohibiting Bond from competing with SWAT by engaging in his own business will not be allowed. Bond did not, however, form his own business to compete with SWAT. Rather, he accepted an employment position with NRS, SWAT's competitor. Thus, the applicable provision in the Agreement becomes that which unambiguously prohibits Bond from serving as an employee in any business which is in direct or indirect competition with SWAT. The language of this provision goes beyond the limited exception of § 921(C) by preventing Bond's employment in specified parishes in any capacity with any other business in direct or indirect competition with SWAT. It is therefore unenforceable.
>
> The fact that Bond was employed by NRS in the same position he held at SWAT does not change the analysis. The statute does not allow a flat prohibition of employment by a competitor, even if the employee's new job duties are exactly the same as those performed for the former employee. The contractual language, prohibiting Bond from accepting employment by a competitor of SWAT, is simply overbroad and therefore null and void.

*Id.* at 308 (footnote omitted).

6

As did the employee in *SWAT 24*, Mr. Bailey became the *employee* of another business following the termination of employment with Sola. However, Sola asks this court to distinguish Mr. Bailey's particular situation from that of the plaintiff in *SWAT 24*. While the supreme court in *SWAT 24* was focused on the question of whether the nature of the subsequent employment is significant in interpreting the exception of La.R.S. 23:921(C), the instant case focuses upon whether the nature of the initial employment is significant. Sola contends that Mr. Bailey's position as an equity holder in Sola differentiates him from a typical employee who may be asked to enter into a non-competition agreement in order to gain employment.

Our review of the supreme court's pronouncement in *SWAT 24* indicates that the language employed in that case is clear and without distinction as to whether an employee was an equity holder at his former place of employment. In considering the question of whether La.R.S. 23:921 permits an agreement limiting future employment in a similar position, the supreme court stated, without qualification, that: "*The statute does not allow a flat prohibition of employment by a competitor*, even if the employee's new job duties are exactly the same as those performed by the former employer." *SWAT 24,* 808 So.2d at 308 (emphasis added). Due to "the contractual language prohibiting [the employee] from accepting employment by a competitor of [the employer] . . ." the language was found to be "simply overbroad and therefore null and void." *Id.* While the precise distinction at issue in the present case was not squarely addressed by the supreme court in *SWAT 24*, we do not find that an applicable exception to their general pronouncement was set forth. Accordingly, we conclude that the trial court's determination that *SWAT 24* is applicable to the facts of this case was correct. This assignment lacks merit.

*Amendment to La.R.S. 23:921*

7

Sola contends that even if this court finds *SWAT 24* applicable to the facts of the instant matter, recent amendment to La.R.S. 23:921 requires reversal of the summary judgment. Sola points to 2003 La.Acts No. 428, § 1, which was enacted subsequent to the trial court's decision in this case. The Act contains the following amendment:

> H. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.

Sola contends that the above measure was enacted to legislatively overrule the supreme court's pronouncement in *SWAT 24*. Sola raises the issue of whether the measure should be afforded retroactive application.

As to the issue of retroactive or prospective application of legislation, La.Civ.Code art. 6 provides:

> In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.

Act No. 428 contains no express indication that it is to be applied retroactively. It is thus necessary to determine whether the amendment contained in Act No. 428 is substantive, procedural, or interpretative in nature.

In *Sawicki v. K/S Stavanger Prince*, 01-0528, p. 8 (La. 12/7/01), 802 So.2d 598, 603-04, the Louisiana Supreme Court reviewed the principles of the above classifications of legislation insofar as they relate to retroactivity, explaining:

> This court has held that substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones; procedural laws are those which prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws; and

8

> interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. *See Sudwischer v. Estate of Hoffpauir*, 97-0785 (La. 12/12/97), 705 So.2d 724; *Segura v. Frank*, 93 C 1271 (La.1/14/94), 630 So.2d 714, 723.

Sola contends that Act No. 428 is the legislature's clarification of its intent in creating La.R.S. 23:921, a clarification it contends was in response to the supreme court's decision in *SWAT 24.*

Having reviewed the amendment contained in Act No. 428, in light of the complex legislative and jurisprudential background of La.R.S. 23:921 and the supreme court's decision in *SWAT 24*, we do not find that retroactive application is appropriate. As comprehensively discussed by the supreme court, La.R.S. 23:921 has a history of varying interpretations in the courts of appeal of this state. The conflict between the circuits was put to rest with the decision in *SWAT 24*. The subsequent amendment was clearly in the nature of a substantive change to the law as it existed after the supreme court's pronouncement in *SWAT 24*. This type of response to a supreme court determination cannot be said to be merely interpretive, but must be viewed as substantive insofar as it establishes a new rule. Accordingly, as the events at issue in this case occurred prior to the enactment of 2003 La.Acts No. 428, § 1, the new provision is inapplicable to the instant case.

This assignment lacks merit. As the submissions indicate that the movant, Tony Bailey, is entitled to judgment as a matter of law, we find no error in the granting of the summary judgment.

**DECREE**

For the foregoing reasons, the summary judgment entered in favor of the defendant, Tony Bailey, is affirmed. All costs of this matter are assigned to the plaintiff, Sola Communications, Inc.

**AFFIRMED.**

SOLA COMMUNICATIONS, INC.

VERSUS

TONY BAILEY

EZELL, J., concurring.


There is much history to review with regard to agreements not to compete. We must acknowledge that agreements not to compete are obligations not to do. La.Civ.Code art. 1756. Injunctive relief can be used to enforce a valid agreement not to compete. Courts of this state have upheld, as valid, agreements not to compete which are ancillary to the sale of a business and its good will. *See Moorman & Givens v. Parkerson*, 127 La. 835, 54 So. 47 (1911) and *Hickman v. Branan,* 151 So.113 (La.App.Orl. Cir. 1933).

As in *Gold & Suckle Inc. v. Suckle*, 335 So.2d 713 (La.App. 2 Cir.), *writ denied,* 338 So.2d 700 (La.1976), we are called upon to decide whether the agreement not to compete under consideration is ancillary to or is an incident of the sale of a business, or is it a separate and independent employee-employer contract that would make it subject to the provisions of La.R.S. 23:921. In the case before us it is clear that the employment contract and purchase agreement which contained the agreement not to compete was an incident of and ancillary to the purchase of Sola Communications, Inc. For us to follow *Swat 24 v. Bond*, 00-1965 (La. 6/29/01), 808 So.2d 294, would call for us to ignore what has prompted the legislature to amend La.R.S. 23:921 in the first place. By following *Swat 24* we will be construing the

statute so narrowly as to effectively rule that no non-compete clauses could be enforced. This interpretation of the statute completely ignores the competitive realities of today's commercial world.

There are too many questions raised in the case at hand that are not answered to my satisfaction in *Swat 24*. The position that I would take is the same as expressed in Justice Traylor's dissent in *Swat 24*. By adopting the dissent, I realize that I would be following the previous rulings of the Third Circuit with regard to the question presently before us. *See Moreno & Assocs. v. Black*, 99-46 (La.App. 3 Cir. 5/5/99), 741 So.2d 91, *writ denied*, 99-1613 (La. 6/16/99), 745 So.2d 606.

I want to stress that I do feel that the legislative history in these cases has been one of constant change. It is important for the court to take an approach that would best achieve the legislative intent, but preserve a balance between employers and employees by considering the words of the contract, whether the employers are competitors, and the employee's position and its impact on the former employer.

After all is said, it is clear that La.R.S. 23:921 is susceptible to more than one meaning, this was acknowledged in *Swat 24* by the majority. I disagree with their interpretation of the legislative purpose and intent in enacting La.R.S. 23:921. There is a question that I must ask which I find very important in this case and that is, " Is it not possible for a former employee to be an independent contractor and solicit customers of his former employer and not be an employee of the employers that may be competing against the former employer." If you can answer the question with a "yes" answer then we are talking about the effect that a single employee might have on his former employers and he is not doing it in the form of carrying on or engaging in a business similar to that of his former employer. It is clear that the word "engage" has many definitions. The term "engage" supports that opposite findings, namely that an individual is engaged in the employ of another. If the legislature intended to make

2

La.R.S. 23:921 so restrictive then the legislature could have easily said, "engaging or carrying on his <u>own business</u>." *See Swat 24*, 808 So.2d 294.

After stating all the reasons that would possibly distinguish this case before the court and *Swat 24*, I am aware of the mandate voiced by the supreme court majority in *Swat 24*. In light of the ruling of *Swat 24* I must concur with the decision of this court.