STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0393

HERFF JONES, INC. AND
GRADUATE SUPPLY, INC.

VERSUS

NETTIE SUE GIROUARD, JAMES RABB,
WARREN RABB AND THE GRAD SHOPPE, INC.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 2006-4331
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter,
Judges.

REVERSED AND REMANDED.

John P. Wolff, III
Tiffany N. Thornton
Keogh, Cox & Wilson, Ltd.
Post Office Box 1151
Baton Rouge, LA 70821
(225) 383-3796
COUNSEL FOR PLAINTIFF/APPELLEE:
      Herff Jones, Inc.

John Dale Powers
Neil Mixon

**Powers, Hightower & Sellers, L.L.P.**
**Post Office Box 15948**
**Baton Rouge, LA 70895**
**(225) 928-1951**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Graduate Supply, Inc.**

**Jean Ouellet**
**Perrin, Landry, deLaunay, Dartez & Ouellet**
**Post Office Box 53597**
**Lafayette, LA 70505-3597**
**(337) 233-5832**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Nettie Sue Girouard**

PETERS, J.

The defendant, Nettie Sue Girouard, appeals the trial court's grant of a preliminary injunction prohibiting her from violating contractual covenants not to compete with the plaintiffs, Herff Jones, Inc. and Graduate Supply, Inc., in their business. For the following reasons, we reverse the trial court judgment and remand the matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

Herff Jones, Inc. (Herff) has, for a number of years, been in the business of manufacturing and selling graduation class rings, robes, medals, diplomas, caps and gowns, and similar products to graduates, parents, and schools throughout Louisiana. In 1993, Ms. Girouard became associated with Herff as an independent contractor/sales representative. This litigation arises from the specifics of three agreements entered into between Ms. Girouard and Herff, one in 1993 and the other two in 2004.

In initially entering into the business relationship with Herff, Ms. Girouard executed a written contract designated as a "Herff Jones Sales Representative Agreement" (1993 Agreement), which provided in part that under certain conditions expressed in the contract, she would not compete with Herff in a specific territory after terminating the relationship created by the contract. Eleven years later, when she did terminate the relationship with Herff, she entered into a second contract entitled "Sales Representative Special Agreement" (2004 Agreement), wherein she agreed to maintain the noncompetition covenant of the 1993 Agreement, but in a modified form. Ancillary to that agreement, Ms. Girouard entered into an employment agreement with Graduate Supply, Inc. (Graduate Supply), a new Herff affiliate.

Ms. Girouard then maintained the modified relationship with Herff for another two years. However, in 2006, she terminated her relationship with Herff and commenced working for The Grad Shoppe, Inc. (The Grad Shoppe). The Grad Shoppe, which is owned by Warren and James Rabb, is a direct competitor with Herff and sells and distributes similar products throughout Louisiana. The relationship between The Grad Shoppe and Ms. Girouard formed the basis of the plaintiffs' suit for injunctive relief.

Herff and Graduate Supply filed suit on August 15, 2006, seeking an injunction and damages for violations of the 1993 and the 2004 agreements not to compete. In filing suit, they named as defendants Ms. Girourad, The Grad Shoppe, Warren Rabb, and James Rabb.[1] At the October 16, 2006 hearing on the request for a preliminary injunction, the plaintiffs offered the written contracts to which Ms. Girouard was a party; the depositions of Ms. Girouard and Kirk Shryoc, Herff's vice-president for sales; and the affidavit of Steve Dykes, who works for Graduate Supply. The defendants countered this offering with affidavits from Ms. Girouard and Warren Rabb. Considering the record, there exists little dispute regarding the content of the written agreements at issue.

*The 1993 Agreement*

Ms. Girouard executed the 1993 Agreement on July 1 of that year. Under its terms, she became Herff's sales representative in a territory described in the

---

[1]The petition and amending petitions also pleaded a violation of the Uniform Trade Secrets Act contained in La.R.S. 51:1341 et seq., a breach of her fiduciary duty by Ms. Girouard, and a conspiracy to commit an intentional tort of conversion by all defendants. However, there was no ruling on the demands asserted against the other defendants, nor was there any ruling against Ms. Girouard on the other grounds asserted in the plaintiffs' petitions. The only judgment rendered by the trial court was a preliminary injunction issued against Ms. Girouard on the ground that the plaintiffs had demonstrated that Ms. Girouard was in violation of the agreements not to compete. Therefore, the appeal now before us is limited to that issue.

agreement as Section B, consisting of all schools in thirteen named parishes as well as specifically named schools in three additional parishes. The agreement, which was a standard form agreement prepared and provided by Herff, was clear in establishing that Ms. Girouard was an independent contractor and not Herff's employee. In that regard, it stated that "[n]othing herein shall be construed to ascribe unto [Ms. Girouard] a status other than that of an independent contractor." The agreement provided that Ms. Girouard would be compensated on a commission basis and that the relationship created was terminable by either party by sixty days' written notice to the other party. It further provided that on termination of the agreement by either party, Herff had the option to buy the business from Ms. Girouard based on a formula of "Territory Commission Splits" over a period of three years following the date of termination. Specifically, in exchange for the commission splits envisioned by the formula, Herff was to receive the goodwill developed by Ms. Girouard through her sales activities. In order to preserve that goodwill, Ms. Girourad agreed to continue to render services to Herff which might be necessary for the orderly transfer of her business, and agreed not to compete with Herff in the business. However, the agreement also provided that in the event Herff chose not to exercise the option to purchase, the noncompetition provision would not be applicable.

The covenant not to compete stated the following:

> In consideration of Company's purchase of Representative's Business (and the payment of Territory Commission Splits), Representative covenants that during the period of time Representative shall receive Territory Commission Splits as set forth above and for a period of one (1) year thereafter, Representative will not compete, directly or indirectly (nor receive, in any form, benefit from a competitor of the Company) in the Territory against Company, any of its sales representatives, employees or other authorized agents, or any of its subsidiaries or affiliates. In addition, Representative agrees not to compete, directly or indirectly, against Company, its sales

3

representatives, employees or other authorized agents, its affiliates or its subsidiaries by selling, marketing, manufacturing, creating, servicing, leasing or purchasing Products and /or Related Company Products (or products that are similar in form or function to such Products and/or Related Company Products) in the Territory during the period of time Representative shall receive Territory Commission Splits and for a period on [sic] one year thereafter. To "compete" as used herein shall include, among other things, the servicing of accounts, soliciting of sales from customers, supervision of such sales, the recommendation of suppliers of Products and/or Related Company Products other than Company or in any manner contributing to the diminution of Company's goodwill with customers.

In July of 2004, Ms. Girouard informed Herff by letter that she would terminate the contractual relationship in sixty days. In response, Herff informed her that it intended to exercise its option to purchase her business interest pursuant to the terms of the 1993 Agreement. This action gave rise to the execution of the 2004 Agreement, which the parties executed on August 2, 2004.

*The 2004 Agreement*

This two-page document stated that its purpose was to implement Herff's option to purchase provided for in the 1993 Agreement. However, despite this declared purpose, which makes no mention of an employment relationship, and despite the language of the 1993 Agreement specifically asserting that no employment relationship had been created between Ms. Girouard and Herff, the injunction petition filed by the plaintiffs described the 2004 Agreement as follows:

> Herff Jones, Inc. and Girouard set forth terms for the sale of the business as well as terms of their *continuing employment relationship.* Specifically, Herff Jones exercised its first right to purchase and designated Graduate Supply as the replacement representative. In addition, Girouard and Herff Jones agreed on the following provisions for her *continued employment* with Herff Jones:

(Emphasis added).

4

These allegations are incorrect because the 2004 Agreement did not create an employment relationship. The 2004 Agreement did provide, however, that Ms. Girouard would comply with any reasonable request for assistance from Herff and its new sales representative in effecting the transfer of sales and the maintenance of favorable customer relations. Specifically, she was "to help the new representative/s become established in the territory." She agreed to do so through June 30, 2008. Also, the parties adopted a modified version of the noncompetition covenant of the 1993 Agreement. The modification expanded the period of time the noncompetition agreement would be in effect, extending it from July 1, 2004 through June 30, 2009. The 2004 Agreement incorporated Ms. Girouard's obligation to perform services pursuant to the commission splits formula found in the 1993 Agreement. With regard to her compensation under the 2004 Agreement, Ms. Girouard was to receive a commission split of fifty percent, limited to sales to customers from whom she had obtained orders during the twelve months preceding the termination date of the 1993 Agreement.

*The 2004 Employment Agreement*

As previously stated, Graduate Supply is a Herff affiliate. It was incorporated on August 2, 2004, the same day as the execution of the 2004 Agreement. Immediately upon its incorporation, it was designated by Herff as its new sales representative for Ms. Girouard's territory.

Four days after executing the 2004 Agreement, Ms. Girouard entered into a written contract with Graduate Supply. The contract was prepared by Herff, was entitled "Employment Agreement," was terminable at will, and identified the territory covered to be "[a]s determined by [Graduate Supply]." With regard to compensation

5

for her services, the Employment Agreement provided that Ms. Girouard would be compensated at a rate "[a]s determined by [Graduate Supply]" but that the compensation "may be amended from time to time." Emphasizing that the duties Ms. Girouard owed to Graduate Supply would directly benefit Herff, the Employment Agreement bound Ms. Girouard to do for Graduate Supply exactly what she had agreed to do for Herff, i.e., help assimilate the new sales representative into the business. The Employment Agreement contained a noncompetition clause wherein Ms. Girouard agreed not to compete with Herff or Graduate Supply in the sale of Herff products "for a period of one year after Employee's relationship with Sales Representative is terminated and after Employee ceases selling Herff Jones Products."

*Remaining Evidence*

Mr. Shryoc testified that when Herff purchased Ms. Girouard's business in the 2004 Agreement, the main part of the purchase was goodwill, and that the simultaneous creation of Graduate Supply as a business entity created a situation where it was incumbent on all three parties to work together for their mutual benefit. The other deposition and affidavit testimony establishes that less than two years after executing the Employment Agreement Ms. Girouard left Graduate Supply and began working for The Grad Shoppe. In fact, she signed a sales representative contract with The Grad Shoppe on June 19, 2006.

The trial court heard evidence on the preliminary injunction on October 16, 2006, and thereafter issued the preliminary injunction that is the subject of this appeal. Relying on the provisions of La.Code Civ.P. art. 3612(B), which provides that an appeal may be taken as a matter of right from an order or judgment relating to a preliminary injunction, Ms. Girouard perfected this appeal.

6

The only issue before us is whether the preliminary injunction was properly granted. Ms. Girouard asserts that the trial court erred in granting the preliminary injunction because the noncompetition language of the 1993 Agreement was null, void, and unenforceable in that it violated La.R.S. 23:921(C) as that subsection read at that time. Further, relying on La.R.S. 23:921(B), she contends that because the noncompetition language in the 2004 Agreement and its ancillary Employment Agreement related to the sale of the goodwill of her business, it was no longer enforceable by an injunction under La.R.S. 23:921(B) because two years had elapsed between the date of the sale and the preliminary injunction hearing on October 16, 2006.

## STANDARD OF REVIEW

The issuance of a preliminary injunction will not be disturbed on appeal absent a clear abuse of discretion. *Vartech Sys., Inc. v. Hayden,* 05-2499 (La.App. 1 Cir. 12/20/06), 951 So.2d 247. But where the trial court's decision is based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. *Hooper v. Hooper,* 06-825 (La.App. 3 Cir. 11/2/06), 941 So.2d 726*, writ denied*, 06-2823 (La. 1/26/07), 948 So.2d 177; *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983). Here, the underlying issues, whether the noncompetition agreements on which the trial court based its grant of the preliminary injunction were valid and in effect at the time of the hearing on the motion, are questions of law which we will review *de novo.*

## OPINION

7

A valid noncompetition agreement "shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived." La.R.S. 23:921(H). Additionally, "upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement." *Id.* In determining whether the obligee has met his burden of proof, the courts will consider the validity and enforceability of the agreement sought to be enforced. *Vartech,* 951 So.2d 247.

It is well settled that parties are free to contract except for those instances where the government places restrictions for reasons of public policy. *La. Smoked Prods., Inc. v. Savoie's Sausage and Food Prods., Inc.*, 96-1716, 96-1727 (La. 7/1/97), 696 So.2d 1373. The public policy with regard to noncompetition agreements is set forth in La.R.S. 23:921(A)(1), which states that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." Thus, there exists a strong public policy disfavoring such agreements, which is "based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695, p. 5 (La. 6/29/01), 808 So.2d 294, 298. The effect of this longstanding policy has been to prohibit or severely restrict such agreements. Furthermore, because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. *Id.* The rule of strict construction applies "whether the agreement is in the form of restrictions on

8

competition by a former employee, restrictions on competition by the seller of a business, or some other variation which has the effect of limiting competition." *Boswell v. Iem*, 37,713, p. 5 (La.App. 2 Cir. 10/31/03), 859 So.2d 944, 947.

Despite this longstanding policy, La.R.S. 23:921(B) allows an exception to the prohibition against noncompetition covenants for the sale of the goodwill of a business,[2] and La.R.S. 23:921(C)[3] allows a similar exception in cases involving employees and independent contractors. Thus, in analyzing the issue before us, we must first consider if any of these exceptions apply in the three contracts at issue.

In first considering the 1993 Agreement, we note that the agreement clearly identified Ms. Girouard as an independent contractor. However, the exception in La.R.S. 23:921(C) relating to independent contractors was added by 1995 La. Acts No. 937, § 1. In the absence of contrary legislative expression, substantive laws

---

[2]Louisiana Revised Statute 23:921(B) provides (emphasis added):

> Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller or other interested party in the transaction, will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, *not to exceed a period of two years from the date of sale.*

[3]Louisiana Revised Statute 23:921(C) provides (emphasis added):

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, *not to exceed a period of two years from termination of employment.* An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period *not to exceed two years from the date of the last work performed under the written contract.*

apply prospectively only. La.Civ.Code art. 6. Because the 1995 amendment established a new rule, it is substantive and has prospective application only. *See Sola Commc'ns, Inc. v. Bailey*, 03-905 (La.App. 3 Cir. 12/10/03), 861 So.2d 822, *writ denied*, 04-107 (La. 3/19/04), 869 So.2d 858. "A contract is an agreement by two or more parties whereby obligations are created, modified or extinguished." La.Civ.Code art. 1906. "Obligations of parties to a contract are fixed at the time the contract is entered into." *La. Smoked Prods., Inc.*, 696 So.2d at 1378. Thus, only the provisions of La.R.S. 23:921 in effect at the time that the agreement was entered into were applicable in determining whether this agreement was enforceable. *Clear Channel Broad., Inc. v. Brown*, 04-133 (La.App. 4 Cir. 3/30/05), 901 So.2d 553. Therefore, the noncompetition provision of the 1993 Agreement was null and void when it was entered into because it did not fall within any of the then-existing exceptions to the prohibition against noncompetition covenants.

Given our conclusion that the noncompetition provision of the 1993 Agreement was null and void at the time it was entered into, we find that the trial court clearly abused its discretion in granting the preliminary injunction based on the 1993 Agreement. However, the fact that the noncompetition provision was unenforceable did not render the 1993 Agreement totally void because it contained a severability clause. That being the case, we must still consider the effect of the agreement after severing the noncompetition language. *See SWAT 24*, 808 So.2d 294. Additionally, the parties agreed in the 2004 Agreement that:

> All provisions of the Sales Representative Agreement between the parties hereto dated July 1, 1993 and previously executed special agreements remain in full force and effect except those provisions that

10

are specifically superseded by mutual consent by the Special Agreement.[4]

Therefore, the 1993 grant of the option to purchase Ms. Girouard's business and goodwill, including the option to enter into a new agreement, was enforceable, was exercised, and will be given effect.

We turn now to the noncompetition provisions contained in the 2004 Agreement and the Employment Agreement. In determining the validity and enforceability of the two 2004 noncompetition provisions, we need to identify the two 2004 agreements, then test their efficacy under the strict standards of La.R.S. 23:921(B) and (C).

The record is clear that Herff's option to purchase related primarily to the customer goodwill generated by Ms. Girouard during her years of association with the company, as that basically comprised her entire business. Mr. Shryoc testified that "a substantial portion of the sale in August 2004 [was] a sale of goodwill" with the remainder being described as a "transfer of her territory." We interpret the latter to be nothing more than the goodwill of her efforts within that territory. It was this goodwill that Herff in turn conveyed to Graduate Supply.

Goodwill has been recognized in our jurisprudence as an incidental property right connected with a commercial business and capable of sale and transfer from one owner to the other. *Godwin v. Godwin*, 533 So.2d 1009 (La.App. 1 Cir. 1988), *writ denied*, 537 So.2d 1165 (La.1989). It has also been defined as the probability that the customers of the old establishment will continue their patronage. *Simpson v.*

---

[4]The "previously executed special agreements" mentioned in this quotation were those confected simultaneously with the 1993 Agreement and are not relevant to the present dispute. There is no substantial difference between what the 2004 Agreement noncompetition clause sought to accomplish and the literal application of the 1993 provision. Both sought to bind Ms. Girouard not to compete for as long as she received Territory Commission Splits and for one year thereafter.

*Restructure Petroleum Mktg. Servs., Inc.*, 36,508 (La.App. 2 Cir. 10/23/02), 830 So.2d 480. While La.R.S. 23:921(B) provides that the sale of the goodwill of a business may include a noncompetition clause, the period of noncompetition cannot "exceed a period of two years from the date of sale." In the matter before us, the sale occurred in August of 2004, but the noncompetition term extended through June 30, 2009.

Herff and Graduate Supply assert on appeal that the 2004 Agreement "explicitly provides that June 30, 2008, is the date of sale" and that the two-year noncompetition limitation provided for in La.R.S. 23:921(B) did not begin to run until then. But such a provision cannot be found in the 2004 Agreement either explicitly or by implication. Additionally, this appears to be a argument presented for the first time on appeal, as their petition specifically asserts that the sale occurred on August 2, 2004.[5]

We find that the assertions of the petition are correct, not the assertion on appeal. The parties agreed on the thing and the price on August 2, 2004. This court in *Blalock v. Lord*, 05-939 (La.App. 3 Cir. 2/1/06), 927 So.2d 1142, *writ denied*, 06-1624 (La. 9/26/06), 937 So.2d 847, citing La.Civ.Code art. 2456, pointed out that Louisiana does not recognize the common law conditional sales contract; rather, once the parties have agreed on the thing and the price, the sale is complete. Accordingly, the effective date of the sale was August 2, 2004.

Because the 2004 Agreement was a sale of the goodwill of a business, its noncompetition provision was governed by La.R.S. 23:921(B). That being the case, the duration of the noncompetition provision is limited by statute to two years from

---

[5]Admissible evidence at the hearing on an application for a preliminary injunction includes the verified pleadings. La.Code Civ.P. art. 3609.

the date of sale, or until August 2, 2006, and the attempt in the 2004 Agreement to bind Ms. Girouard to noncompetition for a period of nearly five years was void on its face. Whether or not the covenant in the 2004 Agreement could be or was reformed, in the circumstances of this case, to a two year limitation is a question we are not called upon to decide. As we previously stated, the only issue before us on this appeal is whether the preliminary injunction was properly granted. And even if the covenant in the 2004 Agreement was valid for two years, it expired on August 2, 2006. Thus, the trial court clearly abused its discretion in granting the preliminary injunction on the basis of the noncompetition covenant in the 2004 Agreement.

We turn finally to a consideration of the Employment Agreement signed four days after the 2004 Agreement. It contained a one-year noncompetition agreement, and by its language Graduate Supply became Ms. Girouard's nominal employer. Because La.R.S. 23:921(C) permits an employee to agree to a noncompetition provision for a period not exceeding two years from the date work is performed under a written contract, we must consider this agreement in light of that exception.

The noncompetition provision in the 2004 Agreement would have been lifted on August 2, 2006, two years from the date of sale. However, if we give effect to the noncompetition clause found in the Employment Agreement, the competition prohibition would be extended for an additional year, until August 2, 2007. We decline to give that clause any effect.

As pointed out by the trial court, Herff's objective in both of the 2004 contracts was that of "holding on to its clients." The goodwill purchase from Ms. Girouard by Herff and her "employment" agreement with Graduate Supply were to effect that same result. To construe her "employment" agreement as suggested by the plaintiffs

would create an arrangement that could perpetuate the noncompetition covenant beyond the statutory limitation of two years, effectively placing Ms. Girouard in a position of being obligated for some indeterminate period of time under stacked contractual prohibitions against competition. The petitions, the contracts, the depositions, the declarations of Herff and Graduate Supply in their briefs, and the manifest understanding of the trial court and all parties establish that the Employment Agreement was incidental and ancillary to the sale by Ms. Girouard of her goodwill and its "orderly transition" to Herff.

When we place the Employment Agreement between Graduate Supply and Ms. Girouard in its proper perspective vis-a-vis the 2004 Agreement, we see that the Employment Agreement was not truly a separate contract that would be independently subject to the duration provisions of La.R.S. 23:921(C). There were no terms and conditions of actual employment. Ms. Girouard's compensation came from Herff, her duties and responsibilities were owed to Herff, and the entire relationship was under Herff's guidance and control. The so-called employment was inseparably coupled with the sale of her business Ms. Girouard and Herff accomplished through the 2004 Agreement. Herff and Graduate Supply never argued that there was a genuine employment. In their appellate briefs, relying on the law that noncompetition covenants in conjunction with the sale of the goodwill of a business are enforceable, the appellees write that "the various covenants not to compete she signed were executed in conjunction with the sale of a business." They assert that "the covenant not to compete and independent obligations to assist and promote the business of Herff Jones are ancillary to the sale of Girouard's business to Herff Jones." Their arguments to the trial court and their briefs before us attached no

14

significance to the Employment Agreement other than for its repetition of a noncompetition covenant. Similarly, the trial court in its reasons for judgment discussed only the 1993 Agreement and the 2004 Agreement, never mentioning the Employment Agreement as an independent contract containing separate rights and obligations. The court below and the parties regarded the Employment Agreement as merely ancillary to the "buyout" of the business by Herff. Even if the stacking of noncompetition periods could be tolerated under the strict construction rules of La.R.S. 23:921, that did not occur in this case. The noncompetition provision of the Employment Agreement was not an enforceable one.

We conclude that whatever obligation Ms. Girouard owed not to compete terminated on August 2, 2006. The preliminary injunction hearing took place on October 16, 2006. On that date there was no noncompetition agreement in effect, and therefore no legal basis for the granting of an injunction. The trial court clearly abused its discretion in granting the judgment of preliminary injunction.

## DISPOSITION

For the foregoing reasons, we reverse and set aside the judgment granting the preliminary injunction. We remand the matter to the trial court for further proceedings. We assess all costs of this appeal to Herff Jones, Inc. and Graduate Supply, Inc.

**REVERSED AND REMANDED.**