STEWART J.
 

 |,The plaintiff, Action Revenue Recovery, L.L.C., (hereafter “ARR”), appeals a judgment denying its claims for damages and injunctive relief against defendants, eBusiness Group, L.L.C., and Troy Keith, stemming from Keith’s alleged breach of noncompete agreements and fraudulent conduct. Because we find that Keith did not sign a valid noncompete agreement
 
 *1001
 
 and that there is no merit to the claim of fraud, we affirm.
 

 FACTS
 

 ARR provides third-party debt collection services for clients in the medical field. Robert Kennedy, the owner of ARR, hired Troy Keith as ARR’s general manager in August 2003. Though she had no prior experience working for a third-party collections business, Keith came to ARR with significant experience in office management, medical billing, and collections.
 

 While employed by ARR, Keith helped implement procedures that increased productivity, and she worked with Kennedy to start Action Revenue Management Services (“ARMS”), an early-out billing service.
 
 [1]
 
 Both Keith and Kennedy testified that she was to get a percentage of the profits from ARMS. However, Kennedy never provided a specific time frame in which this would occur. Another issue arose when Kennedy brought his daughter into the business in July 2005, and directed Keith to train her. Keith did not want to train Kennedy’s daughter to do her job, and she believed that Kennedy’s daughter had no interest in learning the business.
 

 |2On August 12, 2005, Keith and Kennedy had a disagreement, which Kennedy described as being “a discussion of a personal matter.” Keith quit that day. She left ARR’s office and went to her sister’s workplace where she also talked to William “Trey” Nelson, a businessman and old friend who was looking for a new investment opportunity. Because Keith was upset, Nelson advised her to think about what she wanted to do over the weekend and talk to Kennedy before making any decisions. He also told her to come back to see him if she was serious about leaving ARR.
 

 Keith spoke to Kennedy over the weekend and agreed to return to ARR to complete a project for one of its major clients. During the remainder of August 2005, Keith worked on the project at ARR and began planning a new business with Nelson.
 

 On September 6, 2005, eBusiness Group, L.L.C., (hereafter “eBusiness”), was registered with the Louisiana Secretary of State’s office. Its members were Keith, Nelson, and Nelson’s father-in-law, David Cattar, Sr. In January 2006, eBusiness began operating as a third party collection agency in direct competition with ARR.
 

 When Kennedy learned of the new competitor, he contacted an attorney who sent a letter to Keith on January 19, 2006, along with a copy of a noncompetition agreement signed by Keith on August 22, 2003, (hereafter the “August agreement”). The letter stated that Keith was violating the agreement by soliciting ARR’s clients, demanded that she cease and desist solicitation of ARR’s clients and personnel, and informed her that ARR |swould seek an injunction and damages if she failed to comply with her contractual obligations.
 

 Before going forward with eBusiness, both Nelson and Cattar had asked Keith whether she had a noncompetition agreement with ARR. Keith told them she had no such agreement. Keith testified that she did not recall signing the August agreement, but she did recall that Kennedy had given her a different noncompetition agreement to sign in November 2003 (hereafter the “November agreement”), and had instructed her to have other employees sign similar agreements. Al
 
 *1002
 
 though her signature as general manager appears on agreements signed by other ARR employees, Keith took the advice of a former coworker in human resources and had not signed the November agreement. Keith did not tell Kennedy that she had not signed, and he did not ask.
 

 Although Keith disputed the validity of the August agreement, eBusiness took steps to ensure compliance by removing Keith as an officer and shareholder and prohibiting her from soliciting employees or clients of ARR. Keith remained vice-president of operations.
 

 Seeking damages and injunctive relief, ARR filed suit against Keith and eBusiness based on Keith’s alleged breach of the August agreement. Keith and eBusiness denied the validity of the noncompetition agreement, and Keith filed a reeonventional demand for attorney fees. ARR supplemented its petition to allege fraud by Keith in failing to recall that she had signed the August agreement, in concealing from Kennedy the fact that |4she had not signed the November agreement, and in concealing the fact that she was forming a competing business while still working at ARR.
 

 Both ARR and Keith sought summary judgment to determine the validity of the two noncompetition agreements. In a ruling on February 28, 2007, the trial court determined that the November agreement could not be enforced against Keith, who had not signed it. Though the trial court found that the August agreement did not specify the parishes or municipalities where ARR conducted business as required by La. R.S. 23:921(C), it concluded that an issue remained as to whether Keith, as ARR’s general manager, had knowledge of the parishes where it operated that might be considered in determining whether the agreement was enforceable.
 

 Trial resulted in a judgment denying ARR’s claims. The trial court concluded that Keith’s position as general manager could not supply the missing information required by La. R.S. 23:921(C), particularly in light of her testimony that it was not her responsibility to know all the parishes where ARR operated and that she did not have this knowledge. Keith’s demand for attorney fees was also denied.
 

 ARR appealed. It contends that the trial court erred in concluding that Keith did not breach the noncompetition agreements and in failing to address the fraud and/or intentional misconduct claim.
 

 DISCUSSION
 

 Noncompetition Agreements
 

 The public policy of Louisiana disfavors noncompetition agreements as expressed in La. R.S. 23:921(A)(1):
 

 | fiEvery contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
 

 SWAT 24 Shreveport Bossier, Inc. v. Bond,
 
 2000-1695, p. 4-5 (La.6/29/01), 808 So.2d 294, 298.
 

 The desire to prevent an individual from contractually depriving himself of the ability to earn a living and consequently becoming a public burden is the basis for Louisiana’s strong public policy restricting noncompetition agreements.
 
 Id.
 
 Such agreements are in derogation of the common right and must be strictly construed against the party seeking their enforcement.
 
 Id.
 

 Exceptions allowing restrictions on competition are specifically enumerated by La. R.S. 23:921. Applicable to this matter is
 
 *1003
 
 La. R.S. 23:921(C), which provides in relevant part:
 

 C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
 

 Both the exception set forth in La. R.S. 23:921(C) and the noncompetition agreement must be strictly construed.
 
 Kimball v. Anesthesia Specialists of Baton Rouge, Inc.,
 
 2000-1954, p. 7 (La.App. 1st Cir.9/28/01), 809 So.2d 405, 411,
 
 writs denied,
 
 2001-3316 (La.3/8/02), 811 So.2d 883
 
 and
 
 2001-3355 (La.3/8/02), 811 So.2d 886. If either the action sought to be enjoined pursuant to a noncompetition agreement does not |r,fall within the statutory exception set forth in La. R.S. 23:921(C), or the noncompetition agreement is unenforceable due to its failure to conform to the statutory requirements, then the employer cannot establish entitlement to the relief sought.
 
 Vartech Systems, Inc. v. Hayden,
 
 2005-2499, p. 8 (La.App. 1st Cir.12/20/06), 951 So.2d 247, 255-256.
 

 With these principles in mind we turn to the noncompetition agreements at issue. The trial court found the August agreement unenforceable due to the absence of a geographic limitation as required by La. R.S. 23:921(C). The pertinent language of the August agreement states that it “shall apply to all parishes or counties ARR/FAC covers on a like business in said parishes or counties.” This language does not specify the “parish or parishes, municipality or municipalities” as required by La. R.S. 23:921. The absence of the required geographic limitation is fatal to a noncompetition agreement and renders it invalid.
 
 Sentilles Optical Services, Division of Senasco v. Phillips,
 
 26,594, p. 9 (La.App.2d Cir.3/11/95), 651 So.2d 395, 399-400. We find the August agreement unenforceable for failure to conform to La. R.S. 23:921(C).
 

 Though the November agreement included the specific parishes where ARR carried on its collection business, the trial court found it unenforceable due to the fact that Keith had not signed it. ARR argues that the trial court erred in not considering the totality of the evidence and finding the November agreement enforceable against Keith, who had signed similar agreements as general manager. ARR contends that Keith clearly |7understood the noncompetition agreements which she signed as general manager and knew the parishes and counties where ARR operated.
 

 We find, as did the trial court, that the November agreement is unenforceable. The simple fact is that Keith did not sign it. The record shows that after being given the November agreement by Kennedy, Keith consulted a former coworker who advised her that it would not be in her best interest to sign the noncompetition agreement. Her signature as general manager on noncompetition agreements between ARR and other employees does not signify her consent to enter a noncom-petition agreement with ARR. Whatever knowledge Keith had or did not have about the specific parishes where ARR operated is immaterial to determining whether the unsigned November agreement may be enforced against her. Even so, Keith testified that it was not her responsibility as general manager of ARR to know the various parishes where it operated. Philip
 
 *1004
 
 Trippi, the person whose job it was to solicit new clients for ARR, testified at trial and could not name the parishes where ARR operated.
 

 Because the August agreement does not conform to the statutory requirements of La. R.S. 23:921(C) and because the November agreement was not signed by Keith, the trial court was correct in finding neither agreement enforceable.
 

 Fraud
 
 /
 
 Intentional Misconduct
 

 ARR argues that the trial court erred in failing to specifically address whether Keith’s actions constitute fraud and/or intentionally tortious misconduct. Generally, when a judgment is silent as to a claim or demand, |sit is presumed that the relief sought was denied.
 
 M.J. Farms, Ltd. v. Exxon Mobil Corp.,
 
 2007-2371 (La.7/01/08), 998 So.2d 16;
 
 TSC, Inc. v. Bossier Parish Police Jury,
 
 38,717 (La.App.2d Cir.7/14/04), 878 So.2d 880. The trial court’s thorough written reasons and its judgment dismissing ARR’s demands for damages and injunctive relief show that it gave full consideration to the facts of this matter and the claims of ARR. As a basis for denying Keith’s reconventional demand for attorney fees, the trial court described her behavior as “scheming, dishonest, lying and treasonous.” Even though the trial court clearly disapproved of Keith’s conduct in regard to ARR, it did not conclude that she committed fraud or misconduct for which liability could be imposed. We find no error in the trial court’s failure to specifically address ARR’s fraud and/or intentional misconduct claims. As will be explained, these claims are wholly without merit.
 

 ARR’s amending and supplemental petition alleged that Keith “engaged in a pattern of misrepresentation and suppression of truth with the intention to obtain an unjust advantage for her, and [eBusiness], against the plaintiff ARR.” Keith’s alleged wrongdoings include failing to recall signing the August agreement and then telling Nelson and Cattar that she had not signed a noncompetition agreement, failing to sign the November agreement and deceitfully concealing that fact from Kennedy, working with Nelson to form a competing business while still on ARR’s payroll, and using ARR’s confidential information or trade secrets in forming eBusiness. In short, ARR contends that Keith stole its business model and handed it over to eBu-siness.
 

 | aARR’s claims of fraud and intentional misconduct are essentially claims of unfair trade practices.
 
 [2]
 
 Acts which constitute unfair trade practices are undefined but generally involve fraud, misrepresentation, deception, breach of fiduciary duty or other unethical conduct related to trade or commerce.
 
 Nursing Enterprises, Inc. v. Marr,
 
 30,776, p. 4-5 (La.App.2d Cir.8/19/98), 719 So.2d 524, 528;
 
 United Group of Nat. Paper Distributors, Inc. v. Vinson,
 
 27,739 (La.App.2d Cir.1/25/96), 666 So.2d 1338,
 
 writ denied,
 
 96-0714 (La.9/27/96), 679 So.2d 1358;
 
 Wyatt v. PO2, Inc.,
 
 26,675 (La.App.2d Cir.3/1/95), 651 So.2d 359,
 
 writ denied,
 
 95-0822 (La.5/5/95), 654 So.2d 331.
 

 In the absence of a contrary agreement, an employee is free to compete with his former employer.
 
 Orkin Exterminating Company v. Foti,
 
 302 So.2d 593, 596 (La.1974);
 
 Nursing Enterprises, supra; Wyatt, supra.
 
 Determining what constitutes unfair competition requires the employee’s right to individual freedom to
 
 *1005
 
 be balanced against the employer’s right to honest and fair competition and to the protection of its business assets and property in the nature of trade secrets.
 
 Nursing Enterprises, supra.
 
 As long as the conduct is neither unlawful nor offensive to public policy, an employee is able to discuss changes of employment, effectuate a change of employment, plan to compete, and take preliminary steps in furtherance of that plan.
 
 United Group,
 
 27,739, p. 16, 666 So.2d at 1348. Competition and free enterprise are favored in our society.
 

 JjThe following language from
 
 United Group, supra,
 
 is also instructive:
 

 Without a restrictive agreement, at the termination of her employment, an employee can go to work for a competitor or form a competing business. Even before termination, the employee can seek other work or prepare to compete, except that she may not use confidential information acquired by her from her previous employer. As noted by the court in
 
 Wyatt, supra,
 
 an employee’s involvement in forming a competitive entity, including the solicitation of business and the hiring of employees, prior to terminating her current employment relationship, is not an unfair trade practice.
 

 See
 
 Nursing Enterprises,
 
 30,776, p. 5, 719 So.2d at 528.
 

 These principles go to the heart of ARR’s claim that Keith stole its business and show that it is without merit.
 

 Similar claims and circumstances were at issue in
 
 Nursing Enterprises, supra.
 
 Susan Marr was regional director of Nursing Enterprises, Inc., (“Nursing”), a business that provided nursing staff for hospitals and other health care providers. She developed client relationships and recruited nurses to match with the clients. Susan tendered her resignation after problems arose about a promotion, but she did not immediately quit working. Susan along with her husband and another coworker began forming Lifeline, a new nurse staffing business. They leased office space, purchased office furniture, installed a phone system, and consulted an attorney about incorporating the new business. Shortly after Susan’s last day with Nursing, Lifeline began operating and took over some of its business.
 

 Nursing filed suit against Susan alleging that she violated both a noncompetition agreement and a confidentiality agreement and that she had |ntaken client information and financial data. The noncompetition agreement was found to be null, but trial resulted in a verdict that Susan committed unfair trade practices. She appealed.
 

 In reversing the jury verdict, this court found no evidence that Susan took property belonging to Nursing or utilized its trade secrets in her new business. Client names, such as hospitals and other medical providers, were easily accessible in phone books and did not constitute trade secrets or confidential information. The court noted that a former employee who goes into business competing against the former employer necessarily utilizes the experience and skills acquired and developed during her former employment. As its regional director, Susan helped Nursing thrive. She then continued the same business practices and maintained her relationships with nurses and clients in her new business. The court described this as the “spirit of competition.” Finally, the court found that Susan’s efforts to establish her own business prior to her last day of employment with Nursing did not constitute unfair trade practices and that Susan did not act with the intent to harm her former employer.
 

 
 *1006
 
 The same conclusion is mandated in this matter. Keith’s actions are not unfair trade practices and do not otherwise constitute fraud or an intentional tort. As in
 
 Nursing Enterprises, supra,
 
 the actions taken by Keith in meeting with Nelson to plan a competing business even while she was still on ARR’s payroll do not constitute fraud in the context of unfair trade practices or otherwise. The record shows that Keith had extensive prior experience in office management and medical billing and collections, 112which she used to benefit ARR. She learned the business of third-party collections while at ARR and then used this knowledge to build eBusiness. A former employee’s use in a competing business of the experience and skills acquired in her former employment is not fraud or an unfair trade practice. It is a fact of our free enterprise system and a normal part of competition.
 

 The record does not support ARR’s claim that Keith stole or utilized confidential information, intellectual property, or trade secrets in forming eBusiness.
 
 [3]
 
 When asked directly what proof he had that Keith took documents or other information belonging to ARR, Kennedy answered, “If I had to prove it right now that she took a fact out of there, I couldn’t do it.” Although ARR asserted that Keith stole and used its client list to solicit for eBusiness, ARR failed to prove that Keith took its client list or that the list is a protected trade secret. Both ARR and eBusiness provided third-party collection services for clients in the medical field. As observed in
 
 Nursing Enterprises, supra,
 
 and stated at trial, the names of hospitals and doctors’ offices are readily available in the phone book. Also, Nelson and Cattar testified that they had contacts in the medical community which gave them access to potential clients for eBusiness.
 

 As previously discussed, neither non-competition agreement is enforceable. In the absence of an enforceable noncompetition agreement, Keith was free to compete against her former employer, ARR. Although | |SARR complains that Keith’s failure to inform Kennedy that she did not sign the November agreement is fraud, the simple fact is that Kennedy could have easily ascertained whether Keith had signed the agreement by asking her about it or demanding the return of the signed agreement. Keith did nothing to mislead Kennedy, such as indicating to him that she would sign and then failing to do so. Her actions were not shown to have induced him to rely on her representations. The evidence does not show that Keith acted with the intent to harm ARR.
 

 While fraud may result from silence or suppression of the truth, there must be a duty to speak or disclose information and such a duty may arise where there is a fiduciary relationship between the parties.
 
 Greene v. Gulf Coast Bank,
 
 593 So.2d 630, 632 (La.1992). An employee may owe her employer a fiduciary duty under certain circumstances.
 
 Cenla Physical Therapy & Rehabilitation Agency, Inc. v. Lavergne,
 
 94-1538, p. 4 (La.App. 3d Cir.5/3/95), 657 So.2d 175, 177. ARR has not shown that Keith had a fiduciary duty as an employee to disclose to Kennedy the fact that she had not signed the noncom-petition agreement, particularly when he could have easily discovered whether she had in fact signed the agreement.
 

 Lastly, we find no merit to the claim that Keith is liable for fraud because she failed to recall signing the August agreement and told Nelson and Cattar that she had no noncompetition agreement with
 
 *1007
 
 ARR. Keith had not signed the November agreement, and she testified that she did not recall signing the August agreement when she went to work for ARR. Her claimed lack of recall is not unreasonable and is bolstered by the fact that |ushe sought outside advice when presented with the November agreement. Her actions suggest that she was unaware that she had already signed one version of a noncom-petition covenant.
 

 The evidence shows that Keith went to work for ARR with substantial experience that she used to ARR’s benefit. She then used her skills and ability to organize eBu-siness with Nelson and went into direct competition with ARR. Her actions were not restricted by any valid noncompetition agreement, were not against public policy, and did not constitute either fraud or intentional misconduct.
 

 CONCLUSION
 

 For the reasons stated, we affirm the trial court’s judgment. Costs of appeal are assessed against the appellant, Action Revenue Recovery, L.L.C.
 

 AFFIRMED.
 

 [1]
 

 . Early-out program is a billing service for client accounts that are new balances and not yet bad debts.
 

 [2]
 

 . Unfair trade practices are prohibited by La. R.S. 51:1405(A) which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
 

 [3]
 

 . In ruling on an evidentiary issue, the trial court conducted an in camera inspection of documents produced by ARR and eBusiness. It determined that the documents were not the same.