STEWART, J.
 

 11 James S. Finley (Dr. Finley) and James S. Finley, M. D., A Professional Medical Corporation (the “corporation”), appeal a judgment granting injunctive relief in favor of The Green Clinic, L.L.C., (“TGC”), to enforce a noncompetition clause included in TGC’s Operating Agreement. At issue is whether the trial court erred in applying the law in effect on September 1, 2003, when Dr. Finley assigned his interest in TGC to his professional medical corporation, to interpret the noncompetition clause in TGC’s Operating Agreement. For reasons explained in this opinion, we affirm the trial court’s judgment.
 

 FACTS
 

 Dr. Finley is an orthopaedic surgeon who has practiced with TGC since 1987. Though TGC was first organized as a partnership, it began operating as a limited liability company on January 1, 1994, when its members signed TGC’s Operating Agreement. An operating agreement is any written or oral agreement by the members of a limited liability company memorializing its affairs and the conduct of its business. La. R.S. 12:1301(A)(16). TGC’s Operating Agreement includes a noncompetition clause at Section 11.3.
 

 Over the years the Operating Agreement has been amended and restated, both in whole and in part, with TGC’s members signing each new version or amendment. The version of the Operating Agreement relevant to this dispute became effective as of February 25, 2003. The noncompetition clause at Section 11.3 states:
 

 No individual Member or professional employee of a corporate Member shall engage, directly or indirectly in the ownership, [¡¡.management or operation of a medical office building or provision of physician services at any medical or health care facility providing services substantially similar to those provided by the Organization within Lincoln Parish, Jackson Parish, Bienville Parish, Union Parish, and all of Ouachita Parish West of the Ouachita River for a period twenty-four (24) months after any termination of those Member’s interest in the Organization. This non-competition clause is made by the Members in consideration of the purchase of their interest in the Organization upon withdrawal for any reason and in consideration for the relief from the Organization’s liabilities upon withdrawal (other than Member’s malpractice liability for the Member’s own conduct). The Members acknowledge that a remedy at
 
 *1096
 
 law for breach of this covenant is inadequate, and that the Organization shall be entitled to specific performance and injunctive relief against a former individual Member or professional employee of a corporate Member.
 

 On September 1, 2003, Dr. Finley transferred his membership interest in TGC to his corporation. The document entitled “TRANSFER OF INTEREST IN THE GREEN CLINIC, L.L.C,” provides:
 

 WHEREAS,
 
 Finley is a Member of the Clinic owning a 3.33% interest in the Clinic; and
 

 WHEREAS,
 
 Finley desires to transfer his entire interest in the Clinic to Corporation; and
 

 WHEREAS,
 
 the Clinic has no objection to substituting Corporation in place of Finley as a Member of the Clinic in all respects.
 

 NOW, THEREFORE,
 
 the parties agree as follows:
 

 1. As of the effective date hereof, Finley has transferred his entire membership interest in the Clinic to the Corporation and the Corporation is substituted as a full Member of the Clinic in Finley’s place.
 

 2. Corporation agrees to be bound by all of the terms and conditions of the Clinic’s Operating Agreement, as amended.
 

 The transfer agreement is signed by TGC’s Medical Director, Randy McWhorter; by James S. Finley, M.D.; and by James S. Finley, M.D., as President of James S. Finley M.D., A Professional Medical Corporation.
 

 |sBy letter dated June 1, 2009, Dr. Finley informed TGC of his intent to resign and to become an “employed physician of Community Health Systems as of 9/1/2009.” Community Health Systems owns the Ruston Clinic, L.L.C., where Dr. Finley would be employed as an ortho-paedic surgeon, and Northern Louisiana Medical Center, where Dr. Finley would perform the majority of his surgeries. These facilities are located within walking distance from TGC. Dr. Finley would be in direct competition with TGC.
 

 On June 16, 2009, TGC filed a petition for injunctive relief and a declaratory judgment against Dr. Finley and his corporation. TGC alleged that Dr. Finley’s plan to become an “employed physician” of Community Health Systems violated Section 11.3 of the February 25, 2003, Operating Agreement. TGC later amended its petition to allege that when Dr. Finley transferred his interest in TGC to his corporation on September 1, 2003, the corporation agreed to be bound by the terms and conditions of TGC’s Operating Agreement.
 

 Seeking a declaratory judgment that his employment would not violate Section 11.3, Dr. Finley filed his own petition against TGC. He asserted that the noncompete clause in Section 11.3 is governed by the law in effect February 25, 2003, when he signed that version of the Operating Agreement. Citing La. R.S. 23:921 as interpreted by
 
 SWAT 24 Shreveport Bossier, Inc. v. Bond,
 
 2000-1695 (La.6/29/01), 808 So.2d 294, Dr. Finley asserted that he would not be in violation of Section 11.3 if employed as a physician by a competing practice.
 

 | ,[The two suits were consolidated for trial, with TGC’s request for preliminary and permanent injunctions heard together at the parties’ request. Dr. Finley, Dr. Randy McWhorter; and Doug Sills, the CEO of Northern Louisiana Medical Center, testified and numerous exhibits were entered into evidence. Rendering judgment in favor of TGC, the trial court permanently enjoined Dr. Finley from working as an employed physician for a period of 24 months from September 1, 2009, in
 
 *1097
 
 compliance with the noncompete clause in TGC’s Operating Agreement.
 

 The trial court’s written reasons for judgment concluded that “James S. Finley, M.D., A Professional Medical Corporation, was never an original party to the February 24, 2003 agreement.” Rather, on September 1, 2003, Dr. Finley’s professional medical corporation became a member of TGC and agreed to be bound by the terms and conditions of TGC’s Operating Agreement. This created a new contract governed by La. R.S. 23:921 as amended on August 15, 2003. Thus, the noncompete clause in the Operating Agreement prevented Dr. Finley from going to work for TGC’s competitor as an employed physician. In a footnote, the trial court concluded that even if
 
 SWAT 24, supra,
 
 applied, he would find that Dr. Finley would not be an employee in his new position and would still enforce the noncompete clause.
 

 Dr. Finley now appeals the trial court’s judgment.
 

 DISCUSSION
 

 Dr. Finley’s appeal primarily challenges the trial court’s application of the law governing noncompete agreements in effect on September 1, |s2003, the date of the agreement transferring Dr. Finley’s individual membership in TGC to his corporation. He argues that the Transfer Agreement does not have a noncompete clause and that the parties did not execute a noncompete agreement on that date. Dr. Finley asserts that the only noncompete agreement between the parties is contained in the Operating Agreement dated February 25, 2003. Thus, the law governing noncompete agreements that was in effect on that date, must be applied.
 

 Louisiana’s public policy has traditionally disfavored and restricted noncom-pete agreements.
 
 SWAT 24, supra.
 
 As stated in La. R.S. 23:921(A), every contract, agreement, or provision that restricts one from exercising a lawful profession, trade or business shall be null and void except as provided in the exceptions set forth in the statute. Noncompete agreements are considered to be in derogation of the common right and must be strictly construed against the party seeking their enforcement.
 
 SWAT 24, supra; Action Revenue Recovery, L.L.C. v. eBusiness Group,
 
 44,607 (La.App. 2d Cir.8/19/09), 17 So.3d 999.
 

 The relevant exception allowing for agreements restraining competition is set forth in La. R.S. 23:921(C), which states, in part:
 

 C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
 

 | fiWhen Dr. Finley signed the Operating Agreement of February 25, 2003, La. R.S. 23:921(C) had been interpreted by the supreme court as restricting an employee from engaging in or carrying on
 
 his own competing business
 
 but still allowing an employee to become employed by a competitor of his former employer.
 
 SWAT 24, supra.
 
 The supreme court posited that the legislature could not have intended the absurd results that would follow if the statute were read as prohibiting employment by a competitor. One such result referred to in the opinion was that of a doctor employed by a regional hospital being prevented under a noncompete agreement from practicing medicine in any
 
 *1098
 
 capacity in the region for two years after terminating employment.
 
 SWAT 24,
 
 2000-1695, p. 20, 808 So.2d at 307. This is similar to the situation here. The law in effect on February 25, 2003, would allow Dr. Finley to leave TGC and to become an employed physician at a competing clinic without breaching the noncompete clause of TGC’s Operating Agreement.
 

 However,
 
 SWAT
 
 ¾⅛ narrow interpretation of “carrying on and engaging in a business similar to that of the employer” in La. R.S. 23:921(C) was legislatively overruled. By Act 2003, No. 428, effective August 15, 2003, the legislature broadened the scope of noncompete agreements by amending La. R.S. 23:921 to provide:
 

 D. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
 

 17When the Transfer Agreement was executed on September 1, 2003, the amendment of La. R.S. 23:921 had taken effect and employment by a competing business was now deemed to be carrying on or engaging in a business similar to that of the party with the contractual right to prevent such competition.
 
 [1]
 
 Because of this change in the law, it is necessary to determine whether the Transfer Agreement resulted in the execution of a new noncompete agreement by the corporation, or whether, as Finley asserts, the corporation simply assumed his pending obligations under the Operating Agreement signed by him on February 25, 2003.
 

 Contracts are interpreted in accordance with the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear, explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. When a contract can be interpreted within its four corners, without resort to extrinsic evidence, its interpretation presents a question of law.
 
 ScenicLand Const. Co., L.L.C. v. St. Francis Medical Center, Inc.,
 
 41,147 (La.App. 2d Cir.7/26/06), 936 So.2d 247. In such cases, appellate review is limited to whether the trial court was legally correct or incorrect.
 
 Lawrence v. Terral Seed, Inc.,
 
 35,019 (La.App. 2d Cir.9/26/01), 796 So.2d 115,
 
 writ denied,
 
 2001-3134 (La.2/1/02), 808 So.2d 341.
 

 |sAs shown by the record, including the testimony at trial, the noncompetition clause sought to be enforced is included in Section 11.3 of the February 25, 2003, Operating Agreement signed by Dr. Finley. Though parts of the Operating Agreement have been amended since that date, none of the amendments affect Section 11.3. The Transfer Agreement does not include a specific noncompetition clause within its four corners. However, the Transfer Agreement does state, “Corporation agrees to be bound by all of the terms and conditions of the Clinic’s Operating Agreement, as amended.” (Emphasis added.) In clear and unambiguous language, the corporation agreed to be bound by TGC’s Operating Agreement, which includes the noncompete clause at Section 11.3. By agreeing to be bound by
 
 *1099
 
 the terms and conditions of the Operating Agreement, the corporation in effect agreed to be bound by the noncompete clause included in the Operating Agreement.
 

 A party’s obligations under a contract are fixed at the time the contract is entered into.
 
 Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc.,
 
 96-1716 (La.7/1/97), 696 So.2d 1373;
 
 Block v. Reliance Insurance Company,
 
 433 So.2d 1040 (La.1983). Juridical persons, such as corporations, are distinct from its members. La. C.C. art. 24. When Dr. Finley, on his own behalf as a member of TGC, executed the February 25, 2003, Operating Agreement, his corporation was not yet in existence and not a party to the Operating Agreement on that date. The corporation did not become bound by the Operating Agreement, including the noncompetition clause contained therein, until it became a 1^member of TGC upon execution of the Transfer Agreement on September 1, 2003. On that date it specifically agreed to be bound by the Operating Agreement’s terms and conditions. Therefore, the corporation agreed to be bound by Section 11.3, which prohibited both the corporation and Dr. Finley, as its professional employee, from directly or indirectly engaging in the ownership, management or operation of a medical office building or providing physician services at a health care facility under the terms outlined in the clause.
 

 The Transfer Agreement had dual effect. First, it assigned Finley’s membership interest in TGC to his professional medical corporation. Second, as a new member of TGC, the corporation agreed to be bound by the Operating Agreement. The corporation did not simply assume pending obligations; rather, it became a member of TGC upon transfer of Finley’s membership interest. As a member and as shown by the clear and unambiguous language of the Transfer Agreement, the corporation agreed in its own right to be bound by the Operating Agreement.
 

 A “membership interest” in a limited liability company consists of the member’s rights in the company, including his share of its profits and losses, the right to receive distributions of its assets, and any right to vote or participate in management. La. R.S. 12:1301(A)(14). These rights, which are reflected in Dr. Finley’s 3.33% interest in TGC, are what Dr. Finley transferred and assigned to his corporation. A membership interest is assignable in whole or in part. La. R.S. 12:1330(A). Assignment of a membership interest does not automatically make the assignee a member. |inThe assignee must be admitted as a member in accordance with the provisions governing limited liability companies set forth in La. R.S. 12:1301
 
 et seq.,
 
 or as provided in the company’s articles of organization or operating agreement. La. R.S. 12:1330(A); La. R.S. 12:1332. “An assignee who becomes a member has, to the extent assigned, the rights and powers, and is subject to the restrictions and liabilities, of a member under the articles of organization, any operating agreement, and this Chapter.” La. R.S. 12:1332(B).
 

 TGC’s Operating Agreement allows a member to assign his membership interest to a professional corporation with the Medical Director’s consent. The corporation is then “submitted as a Member in all respects for the individual Member.” Thus, TGC’s Operating Agreement permits assignment of a whole membership interest to a professional corporation and admittance of the corporation as a member without the necessity of unanimous written consent of the other members as required by La. R.S. 12:1332(A) or of any formality other than the consent of TGC’s Medical Director. The Transfer Agreement accomplished assignment of Finley’s entire
 
 *1100
 
 membership interest to his corporation and made the corporation a member, in all respects, of TGC. Upon becoming a regular member of TGC on September 1, 2003, the corporation obtained the rights and powers of a member and became subject to the restrictions and liabilities of a member as provided under the Operating Agreement. Thus, as a member, TGC agreed to be bound by the Operating Agreement and became subject to its restrictions and liabilities, including the | u noncompetition clause. The corporation’s obligations as a member of TGC became fixed as of September 1, 2003.
 

 A noncompetition agreement must be strictly construed.
 
 Action Revenue Recovery, supra; Kimball v. Anesthesia Specialists of Baton Rouge, Inc.,
 
 2000-1954 (La.App. 1st Cir.9/28/01), 809 So.2d 405,
 
 writs denied,
 
 2001-3316 (La.3/8/02), 811 So.2d 883
 
 and
 
 2001-3355 (La.3/8/02), 811 So.2d 886. If the action sought to be enjoined pursuant to the noncompete agreement does not fall within the statutory exception of La. R.S. 23:921(C), or the agreement does not conform to the statutory requirements, then the party seeking enforcement cannot prove it is entitled to the relief sought.
 
 Action Revenue Recovery, supra; Vartech Systems, Inc. v. Hayden,
 
 2005-2499 (La.App. 1st Cir.12/20/06), 951 So.2d 247.
 

 Here, the action sought to be enjoined by TGC falls within the exception of La. R.S. 23:921(C) and the noncompete clause appears to conform to the statutory requirements. Strictly construing the language of the noncompete clause, we find that injunctive relief was properly granted. Because the corporation became a member of TGC and bound itself to abide by the terms and conditions of the Operating Agreement on September 1, 2003, the trial court did not commit legal error in applying the law in effect on that date to determine whether TGC was entitled to enforce the noncompete clause included in the Operating Agreement and to obtain injunctive relief.
 

 La. R.S. 23:921, as amended effective August 15, 2003, provides that a person who becomes employed by a competing business, regardless of 112whether he is an owner or equity interest holder of that business, may be deemed to be carrying on or engaging in a business similar to that of his former employer who seeks to enforce a noncompete agreement. La. R.S. 23:921(D). This is the law in effect on the date the corporation became bound by the Operating Agreement. Thus, under the noncompete clause in the Operating Agreement, Dr. Finley, who is bound as the employee of his professional corporation, is prohibited from being employed as a physician for a competing practice in the designated parishes for a period of 24 months after the termination of the corporation’s membership interest in TGC. In-junctive relief enforcing the noncompete clause in the Operating Agreement against Dr. Finley was properly granted.
 

 Appellants also assigned as error the trial court’s footnote finding that Dr. Finley would not be an “employee” in his proposed new position with Community Health Systems. However, our decision affirming the application of the law in effect on September 1, 2003, renders this assignment moot.
 

 CONCLUSION
 

 For the reasons explained, the judgment of the trial court is affirmed, with costs of this appeal assessed against the appellants.
 

 AFFIRMED.
 

 [1]
 

 . La. Act 2003, No. 428 is a substantive amendment of La. R.S. 23:921 and is to be applied prospectively only.
 
 John Jay Esthetic Salon, Inc. v. Preskitt,
 
 2004-1378 (La.App. 4th Cir.2/23/05), 898 So.2d 538,
 
 writ denied,
 
 2005-1109 (La.6/24/05), 904 So.2d 743;
 
 Sola Communications, Inc. v. Bailey,
 
 2003-905 (La.App. 3d Cir. 12/10/03), 861 So.2d 822,
 
 writ denied,
 
 2004-0107 (La.3/19/04), 869 So.2d 858.