CARAWAY, J.
|!Alleging a breach of a noncompetition agreement, the plaintiff health care provider brought this injunction action against its former employee who had become employed by another health care company. The defendant is a physician assistant. In the defendant’s new employment, he began work in a nearby parish which was not listed in the noncompetition agreement as a parish in which his employment might be restrained. However, on one occasion, defendant performed work in a clinic operated by his new employer in Morehouse Parish, a parish that was listed in the noncompetition agreement. As a result, the former employer filed this suit and the trial court enjoined defendant from providing health care services in any employment in Morehouse Parish. The defendant appealed. Finding error in the trial court’s application of La. R.S. 23:921 and its enforcement of the noncompetition agreement, we reverse.

Facts

On July 15, 2011, West Carroll Health System, L.L.C. (hereinafter “WCHS”), filed this action to enforce a noncompetition provision in the employment contract with its former employee, John Tilmon. WCHS’s petition requested a preliminary *1133 and permanent injunction to prevent Til-mon from employment activities he had begun in Morehouse Parish. Tilmon had been employed by WCHS in West Carroll Parish as a physician assistant from April 19,1997, until June 30, 2011.[1]
UWhen Tilmon was hired in 1997, the parties executed an employment contract with a two-year term. This initial employment contract was never renewed. Nevertheless, the parties executed an agreement on February 10, 2004, entitled “amendment to employment agreement,” which contained only the noncompetition provision. The original employment contract between the parties did not state a non-competition agreement.
The noncompetition agreement provides as follows:
8.3.1 Non-Competition: Employee covenants that during the term of this Agreement and for a period of two (2) years from the Termination Date of this Agreement (“Termination Date”), whether the Agreement is terminated with or without cause, Employee shall not directly or indirectly provide health care services, either as an employee, partner, member, individual provider or otherwise, or own, manage, participate in or work for any business or person which engages in the ownership, operation or management of any health care provider (including, -without limitation, hospitals, single or multi-specialty medical care providers and rural health clinics) that is engaged in a business similar to that of Employer, located in the parishes of West Carroll, East Carroll, Morehouse and Richland, State of Louisiana, and the county of Chicot, State of Arkansas, and any other parish or county in which Employer or an affiliated rural health clinic renders medical services as of the Termination Date (the “Restricted Area”).
Employee expressly agrees that any breach of this Agreement will result in irreparable damage and injury to Employer and that, in the event Employee breaches or threatens to breach the covenant not to compete, Employer shall be entitled to specific performance including immediate injunctive relief in the form of a temporary restraining order and/or preliminary injunction in any court of competent jurisdiction without the necessity of posting any bond. Employer’s right to injunctive relief is independent of, and shall not limit Employer’s right to, stipulated damages, costs, and expenses, including attorney’s fees. In the event it is necessary to enforce this Agreement through legal proceedings, Employee agrees to pay all legal fees, court costs and other expenses incurred in the enforcing of this Agreement by Employer.
Prior to Tilmon’s six-week notification period and resignation from WCHS, he secured new employment with Sterlington Rural Health Clinic |s(“SRHC”). Since SRHC has facilities in Morehouse Parish and other surrounding parishes, Tilmon asked Randy Morris, WCHS’s Chief Executive Officer and Hospital Administrator, to waive the noncompetition agreement for Tilmon’s new employment in Morehouse Parish. Despite his inability to secure a waiver of the noncompetition agreement, Tilmon worked for one day in the summer of 2011 at SRHC’s clinic at Mer Rouge in Morehouse Parish where he filled in for a *1134 nurse practitioner. With this position, it is not clear if Tilmon was employed to perform only the temporary duties of a nurse practitioner or whether he might undertake additional duties of a physician assistant somewhere in Morehouse.
In response to WCHS’s suit, Tilmon filed exceptions of no cause of action and no right of action on July 21, 2011. Asserting that WCHS does not have health care facilities or “carry on a like business” in Ouachita and Morehouse Parishes, Til-mon argued that the noncompetition agreement is null and void on its face to prohibit his employment there based upon the clear language of La. R.S. 23:921(C). In addition, the defendant argued that the geographic location section of the noncom-petition agreement is overly broad, rendering the agreement unenforceable. According to Tilmon, the language which prohibits employment in “any other parish or county in which Employer or an affiliated rural health clinic renders medical services” is overly broad.
On August 1, 2011, the trial court held a hearing on the exceptions and WCHS’s request for injunctive relief. At the hearing, Tilmon testified, |4and Morris agreed, that the following is an adequate job description of the physician assistant’s role which Tilmon performed:
A physician assistant is a physician extender, he provides extended care to patients of said physicians and he does not have patients of his own, he has — he works under a physician as an employee or as an agent of the physician, much like an LPN works under an RN to extend the RN’s capabilities to see more patients, to treat and care for more patients. So as a physician assistant ... I extended Dr. Fakhre’s realm and ability to care for more patients that he couldn’t see by himself.
According to Tilmon, “physician assistants are paid for usually by hospital groups or by said groups and then placed under the services of the doctors that they — I also worked for several doctors in the emergency room and in the hospital.”
In its petition, WCHS asserted that it operates a “hospital in West Carroll Parish, Louisiana, along with providing medical services in other parishes.” Additionally, Tilmon testified that Community Medical Clinic, West Carroll Memorial Hospital, West Carroll Care Center and Carroll Nursing Home are all owned and operated by WCHS in West Carroll Parish. Tilmon testified that he worked all of these facilities, at least once, while he was employed by WCHS.
In contrast to these West Carroll facilities, the parties agreed that WCHS does not have any buildings or health care facilities outside of West Carroll Parish. As for Morehouse Parish, WCHS’s only business involves providing home health care services. Notably, Tilmon’s current employer, SRHC, does not perform home health services in Morehouse Parish. In addition, all of WCHS’s revenue in More-house Parish stems from these |fihome health services and none of these services are rendered by physician assistants.
Furthermore, WCHS does not have a physician or a physician assistant directly performing services in Morehouse Parish. The evidence indicated that Tilmon cannot perform home health services unless specifically authorized by a physician.
The policy behind the noncompetition agreement’s inclusion of Morehouse and other surrounding parishes in the agreement was discussed by Randy Morris, as follows:
While he [Tilmon] was employed at West Carroll in his — compliments to him, he’s an excellent provider of health care and had a big following of patients. The fact that he would be practicing in Mer Rouge, in Morehouse Parish there’s *1135 a tendency that those patients would seek health care with them — with him and his new employer at the detriment to West Carroll Health Systems.
Since WCHS has at least 280 patients who reside in Morehouse Parish and travel to West Carroll for medical services, it argued that Tilmon should be restricted from' providing services as a physician assistant in that parish. WCHS further argued that as its physician assistant, Tilmon ordered prescriptions and diagnostic tests during his prior employment for WCHS’s patients that were provided in Morehouse Parish.
From the hearing, there was little evidence regarding Tilmon’s current employer, SRHC. Tilmon testified that SRHC hired him in spite of the noncompetition agreement. SRHC hired him as a physician assistant, and Tilmon performs most of his services at SRHC’s rural health clinic in Ouachita Parish. Since Ouachita was not listed in the noncompetition agreement, the current litigation stems from Tilmon’s activities as an SRHC ^employee in Morehouse. The evidence indicated that SRHC may operate a hospital in Morehouse Parish in Bastrop and employ the services of a physician assistant at that facility. While working for SRHC, Tilmon testified that he was told to report to work at SRHC’s clinic in Morehouse Parish. He worked in that parish for only one day, because the clinic needed him to fill in for an ailing nurse practitioner.
In its oral reasons, the trial court noted . that the defendant had full knowledge and understanding of the noncompetition agreement. Relying on AMCOM of Louisiana, Inc. v. Battson, 96-0319 (La.3/29/96), 670 So.2d 1223, the trial court reformed the noncompetition clause by striking from the noncompetition agreement the potentially unenforceable addendum, “and any other parish or county in which Employer or an affiliated rural health clinic renders medical services as of the Termination Date (the “Restricted Area”).” After denying the defendant’s exceptions, the trial court granted a preliminary and permanent injunction in favor of WCHS. Specifically, the judgment provided as follows:
The request of West Carroll Health System, L.L.C. d/b/a West Carroll Memorial Hospital for a preliminary injunction and permanent injunction is granted and John Tilmon is enjoined and prohibited from further breaching the non-competition agreement by engaging in any employment and providing health care services in the Parishes of West Carroll, East Carroll, Morehouse and Richland, State of Louisiana, and the County of Chicot, State of Arkansas, for a period of two (2) years from his termination of employment with West Carroll Health System, L.L.C. d/b/a/ West Carroll Memorial Hospital on June 30, 2011.
The trial court signed the judgment and motion and order of devolutive appeal on August 22, 2011.

_J'¿Discussion

Noncompetition agreements between employees and employers are governed by La, R.S. 23:921 (hereinafter “the Statute”) which provides in pertinent part, as follows:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
[[Image here]]
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an *1136 agent, servant, or employee may agree with its employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from the termination of the employment.
⅝ ⅜ ⅝ ⅝ ⅜: ⅝
D. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.[2]
* ⅝ ⅛ ⅝ ⅜ ⅜
H. Any agreement covered by Subsection B, C, E, F, G, J, K, or L of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor’s failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order in-junctive relief enforcing the terms of the agreement.
A covenant not to compete contained in an employment agreement is disfavored in Louisiana because it may function to deprive a person of his | ^livelihood. Such a covenant will be enforced only if it meets narrowly drawn criteria. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294; Sentilles Optical Services, Div. of Senasco, Inc. v. Phillips, 26,594 (La.App.2d Cir.3/1/95), 651 So.2d 395. La. R.S. 23:921 C sets forth an exception allowing restrictions on competition. Heart’s Desire, LLC v. Edwards, 46,222 (La.App.2d Cir.4/27/11), 2011 WL 1630175; Action Revenue Recovery, L.L.C. v. eBusiness Group, L.L.C., 44,607 (La.App.2d Cir.8/19/09), 17 So.3d 999. This exception must be strictly construed and agreements confected pursuant to this provision must strictly comply with its requirements. SWAT 2k, supra; Regional Urology, LLC v. Price, 42,789 (La.App.2d Cir.9/26/07), 966 So.2d 1087, writ denied, 07-2251 (La.2/15/08), 976 So.2d 176.
An injunction shall be issued in eases where irreparable injury, loss, or damage may otherwise result to the applicant. La. C.C.P. art. 3601(A). However, in the event an employee enters into an agreement with his employer not to compete, pursuant to La. R.S. 23:921, and fails to perform his obligation under such an agreement, the court shall order injunctive relief even without a showing of irreparable harm, upon proof by the employer of the employee’s breach of the noncompete agreement. Vartech Systems, Inc. v. Hayden, 05-2499 (La.App.1st Cir.12/20/06), 951 So.2d 247; Clear Channel Broadcasting, Inc. v. Brown, 04-0133 (La.App.4th Cir.3/30/05), 901 So.2d 553, 557; La. R.S. 23:921(H). Even though La. R.S. 23:921 mandates the court to issue injunctive relief upon proof of the obligor’s failure to perform, without the necessity of proving irreparable |9inj ury, the employer must still establish that it is entitled to relief. Vartech Systems, supra at 255; Clear Channel, supra at 558. Where the actions *1137 sought to be enjoined pursuant to a non-competition agreement do not fall under the statutory exception, or where the non-compete agreement is found to be unenforceable for failure to conform to the statute, the employer is unable to establish that it is entitled to the relief sought. Green Clinic, L.L.C. v. Finley, 45,141 (La.App.2d Cir.1/27/10), 80 So.3d 1094; Action Revenue, supra; Vartech Systems, supra. La. C.C.P. art. 3605 requires that an order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained.
Generally, a trial court is granted wide discretion in deciding whether to grant or deny an injunction and its ruling will not be disturbed absent manifest error. Century 21 Richard Berry & Assoc., Inc. v. Lambert, 08-668 (La.App.5th Cir.2/25/09), 8 So.3d 739; Limousine Livery, Ltd. v. A Airport Limousine Service, L.L.C., 07-1379 (La.App.4th Cir.3/12/08), 980 So.2d 780; Wied v. TRCM, LLC, 30,106 (La.App.2d Cir.7/24/97), 698 So.2d 685. Where the trial court’s decision is based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. Herff Jones, Inc. v. Girouard, 07-0393 (La.App.3d Cir.10/3/07), 966 So.2d 1127, writs denied, 07-2463, 07-2464 (La.2/15/08), 976 So.2d 185; Hooper v. Hooper, 06-0825 (La.App.3d Cir.11/2/06), 941 So.2d 726, writ denied, 06-2823 (La.1/26/07), 948 So.2d 177.
WCHS argues that its 2004 contract directed Tilmon, should he leave WCHS’s employment, to refrain from providing “health care services” with a competing employer in Morehouse Parish because WCHS had a large client base in that parish and many of the clients had been treated by Tilmon at WCHS. Other than its large client base, WCHS does not place emphasis on its direct business activity conducted in that neighboring parish which is a home health services business. Tilmon therefore argues that WCHS’s asserted business interest in Morehouse does not demonstrate that it “carries on a like business” in that parish similar to its hospital and other medical facilities in West Carroll.
Under Subsection C of the Statute, the geographical scope of the restraint upon an employee under a noncompetition agreement depends upon the existence of the employer’s similar or “like” business interest in parishes beyond the place where the employee was formerly employed. The present geographic provision of Subsection C was enacted in 1989. Pri- or to 1989, the former La. R.S. 23:921 contained a geographic focus identifying the “same business that [the] employer is engaged over the same route or in the same territory.”[3] The use of the “route” and “territory” language indicated the statutory concern for the employer’s customer based ^geographic area which the former employee might invade with his business activities upon leaving employment.
The present geographic limit in the post-1989 version of the Statute broadly allows for many parishes to be “specified” in the noncompetition agreement. Nevertheless, a particular parish may be off limits to the employee only if the “employer carries on a like business therein.” In view of the statutory history of the Statute and the nature of commercial business ac *1138 tivity that generally does not abruptly end at the parish line of the principal location of a business, the lack of an actual business facility in Morehouse in this case is not the only measure for the geographic test of the Statute. Its language of “carrying on” “business” allows for the employer to demonstrate significant business activity which might be competitively impacted in a parish outside of the location where the employee worked. The customer “territory” concept is therefore still a business interest of the employer recognized under the Statute.
The case of H2O Hair, Inc. v. Marquette, 06-930 (La.App.5th Cir.5/15/07), 960 So.2d 250, addressed the geographic test for a permissible noncompetition agreement. In that case, the defendant worked as a stylist at H20 Salon & Spa in Metairie, in Jefferson Parish. H20 showed that the majority of their clients were from Orleans, Jefferson, and St. Tammany Parishes “where H20 solicits and sells services directly and over the phone to these clients and also performs services to their clients in these areas, whether it be at the salon or on location.” While employed, Marquette entered into a noncompete agreement with H20 that prevented her from | ^providing hair and cosmetic services in Orleans and Jefferson parishes. Despite this agreement, Marquette used H20’s customer list to solicit clients in Jefferson and Orleans Parish for her new salon, Salon M, in Orleans Parish.
The court enjoined Marquette from operating her salon in Orleans Parish based upon her substantial solicitation activities in that parish, even though H20 did not have a salon in Orleans Parish. “It was uncontradicted that a substantial portion of H20’s customers are residents of Orleans Parish, and that H20’s solicitation of customers in Orleans Parish via advertising and other means is integral to its business.”
Similarly, the business interest which WCHS asserts in Morehouse Parish is its client base. West Carroll and Morehouse parishes share a common boundary. WCHS presented evidence that in the pri- or four years 280 patients from Morehouse made 1,567 office visits with West Carroll physicians under whom Tilmon worked. Significantly, WCHS does not assert that its Morehouse patients who were served with home health care are affected. Neither Tilmon nor SRHC is involved in that aspect of WCHS’s business in Morehouse. In this injunctive claim against Tilmon, WCHS sought to prove that its “like business” in the neighboring parish was its client base. It claims that it “carries on” business with those clients because they are within the immediate service area of the WCHS health care facilities in West Carroll. The trial court’s recognition of that “like business” interest from the undisputed facts regarding WCHS’s client base is not, in our opinion, an erroneous application of the Statute given the | ^number of patients involved and their immediate proximity to the WCHS facilities.
Nevertheless, regardless of WCHS’s sufficient proof for the geographic test of the Statute, Tilmon additionally argues that the Statute cannot now be used “to preclude Mr. Tilmon’s employment in any capacity with a competitor” of WCHS in Morehouse Parish. This position calls for examination of the Statute’s scope of the employer’s restraints on the employee’s conduct for obtaining his livelihood in relation to the employer’s competing economic interests.
In this court’s ruling in Summit Institute for Pulmonary Medicine and Rehabilitation, Inc. v. Prouty, 29,829 (La.App.2d Cir.4/9/97), 691 So.2d 1384, writ denied, 97-1320 (La.9/26/97), 701 So.2d 983, we identified two restraints suggested under the Statute which the employer is *1139 allowed to use in a noncompetition agreement. Those restraints are listed between the somewhat awkward “and/or” conjunctions expressed by the legislature. We found that the employee could be prevented from (1) engaging in a similar competing business which he owns or controls as an equity owner, or (2) becoming employed in a competitor’s business in a position in which he solicits the customers of his former employer.
This distinction between being in business for oneself and being merely an employee in another business was important in our interpretation in Summit of the legislative use of the “and/or” conjunctions. We thus viewed the first broad restraint against “carrying on or engaging in business” as particularly applicable to the employee who starts a business of 114his own competing against his former employer regardless of any degree of solicitation of the customers of the former employer. On the other hand, when the employee becomes employed in a competing business, a dual test for the restraint is more appropriate as suggested by the “and” in the legislative use of the “and/or” expression. It is not enough that the employee is hired in a competing business. The impact of his hiring on the former employer’s revenue from customers must be considered. Otherwise, the broad measure of the first restraint, “engaging in business,” would make the legislative use of the second restraint against “solicitation” superfluous. We concluded:
We therefore interpret the two restraints listed in Section C to allow the employer to prevent a former employee from engaging in a similar business for himself, i.e. an entire business venture, or from being employed in a competitor’s business in a position wherein he solicits the customers of his former employer.
Though a broader statutory interpretation of Section C and its “and/or” provisions might be made, the protection which the legislature intended for the employer, which detracts from the broad public policy concern for the employee, should promote a reasonable economic goal. While it may be reasonable to prevent an employee from forming a business for himself competing directly against his former employer in the first two years after the employee’s termination, it is not reasonable to prevent him from accepting employment with an already existing competitor where his new position involves no solicitation of the customers of the former employer. Such interpretation would unreasonably prevent an employee, such as Prouty, from employment in the medical field as a computer programmer, respiratory therapist or a maintenance person even though such positions might have no impact on the former employer’s ability to compete with the new employer.
Id. at 1387-1388.
After Summit, the Supreme Court’s ruling in SWAT 2Jh supra, narrowed the scope of the Statute’s permissible restraint even further by its 1 ^determination that the Statute did not allow for any restraint on the employee unless he engaged in a competing business as an owner or entrepreneur. The employee that secured new employment in a competing business could not be restrained by a noncompetition agreement with his employer. This ruling was soon overruled by Act 428 of 2003 which amended the Statute by the inclusion of Subsection D, which provides:
For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
*1140 The 2003 amendment makes clear that any employee who becomes employed in a competing business or who opens his own competing business as an owner is a person who may be restrained by his former employer under Subsection C of the Statute. This clarification after the SWAT 2⅛ ruling, however, does not change this court’s concern in Summit, that the employer’s restraint over its former employee should be shown to promote and protect a “reasonable economic goal” or business interest of the employer.
The two categories of the employee’s re-employment, now express in Subsection D, have significant differences in their impacts on the former employer’s business. If the employee commences a similar business as owner, that “like” business is a competitive force regardless of the employee’s actual role in the business. Whether or not the employee is actively participating in his new venture in a manner similar to his services in his former employment, the new business itself can competitively harm l1fihis prior employer. The same is not necessarily true if the employee becomes employed in a competing business. The new employer may have long operated as a competitor business of the former employer. The measure of the employee’s impact in that competitor business upon the former employer’s customers, goodwill, revenues or other business interest, as suggested by the Statute’s specific customer solicitation concern, remains the employer’s burden in seeking injunctive relief. This is a reasonable interpretation of the allowance given the employer to temporarily restrain its employee under Subsection C in view of the strong general prohibition against restraints on a person’s livelihood.
Moreover, particularly in the present case, where WCHS has argued only a territorial client-based interest in the neighboring parish where it conducts no actual business employing the services of a physician assistant, the Statute’s specific emphasis upon the prohibition of solicitation of those clients is an important gauge of Tilmon’s conduct. That solicitation concern may be broader than direct solicitation alone depending upon the circumstances of each case where the employee becomes employed in a competing business. Yet the employer bears the burden of proof to show the particular impact upon its business which the employee’s new employment activities may cause.
From this interpretation of the Statute, Tilmon’s employment alone in the “specified” parish of Morehouse is not dis-positive. In view of WCHS’s asserted business interest for its client base for medical services in Morehouse Parish, the specific actions of Tilmon to be enjoined must be 117proven and considered in terms of the reasonable protection required for WCHS’s business interest in that parish. In reaching this conclusion, we acknowledge that Subsection H of the Statute relieves the employer of proof of irreparable injury[4] to obtain the remedy of injunc-tive relief for enforcement of the noncom-petition agreement. This does not mean, however, that the employer is relieved of proving the potential injury or competitive impact of the employee’s new employment activities.
From our review of the record, we do not find in this case that WCHS met its burden of proof sufficient for the broad injunction rendered against Tilmon. We note initially that the judgment erroneously enjoins Tilmon from providing health *1141 care services in four parishes and counties other than Morehouse. There was no evidence of Tilmon’s employment or business activities in those locations where there may be positions in health care service which might be filled by Tilmon without any competitive impact on WCHS. As to Morehouse Parish, the evidence of Til-mon’s one-day employment at the Mer Rouge clinic is not sufficient to demonstrate any injury or potential injury to WCHS’s client base. The patients who were attended by Tilmon at the clinic sought SRHC’s medical services on that date without any knowledge of his onetime service. Tilmon was not shown to have commenced employment as a physician assistant by that single event; nor were his limited services shown circumstantially to have impacted WCHS’s medical service relationship with its clients in 11sMorehouse. Significantly, Tilmon’s pri- or work under the physicians in Oak Grove suggests circumstantially that his independent ability to affect WCHS’s client base in Morehouse would be minimal. However, in any event, WCHS offered no proof whatsoever in this case of its need to secure a reasonable economic goal or business interest and prevent its injury by the injunction sought against Tilmon’s limited action. Accordingly, the injunction granted by the trial court is reversed.[5]

Conclusion

For the above reasons, the trial court’s judgment is reversed. Costs of appeal are assessed to appellee.
REVERSED.

. While the parties' initial pleadings state that Tilmon’s employment terminated on June 30, 2011, Tilmon's testimony and WCHS’s brief stated that the defendant worked for WCHS until July 27, 2011. This later termination date is only noteworthy when one considers that WCHS filed its petition on July 15, 2011, and alleged that the defendant had already breached its agreement as of that date.

. Subsection D was added in 2003 as a result of SWAT 24, infra. While this subsection does not directly overrule this case, it clarifies the case by ensuring that the article applies to both employees who open up competing business and employees who merely work for competing businesses.

. In that geographic area the employer could demonstrate under the former Statute that it expended advertising expense related to the employee, which was an emphasis that was eliminated by the 1989 amendment of the law.

. Irreparable injury justifying an injunction is that which can not be adequately compensated in damages, or for which damages can not be compensable in money. Holmes v. Peoples State Bank of Many, 32,749 (La.App.2d Cir.3/3/00), 753 So.2d 1006; Pennington v. Drews, 209 La. 1, 24 So.2d 156 (1945).

. Since we determine from an interpretation of the Statute that an injunction against Til-mon’s actions in the "specified” parish of Morehouse does not lie, we pretermit Til-mon’s further arguments concerning the over breadth of the noncompetition agreement’s attempted bar of his employment "in any other parish or county” where WCHS rendered medical services.