Judgment rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,451-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE | Plaintiffs-Appellants |

versus

| | |
|---|---|
| LAUREN E. McCALMONT, M.D. | Defendant-Appellee |

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 627,923

Honorable Ramon Lafitte, Judge

* * * * *

| | |
|---|---|
| BLANCHARD, WALKER, O'QUIN & ROBERTS, APLC | Counsel for Appellants |
| By: M. Thomas Arceneaux | |
| Daniel J. Baker | |
| | |
| DOWNER, JONES, MARINO & WILHITE, L.L.C. | Counsel for Appellee |
| By: Allison A. Jones | |
| Michael A. Marino | |
| | |
| PUGH, PUGH & PUGH, L.L.P. | |
| By: Lamar P. Pugh | |

* * * * *

Before MOORE, PITMAN, and ROBINSON, JJ.

**PITMAN, J.**

The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"), the governing body for Louisiana State University Health Science Center, Shreveport ("LSUHSC"), appeals the district/trial court's denial of a preliminary injunction it sought against Lauren E. McCalmont, M.D., based on a noncompetition clause in its employment contract with her. For the following reasons, we affirm.

## FACTS

LSU filed a petition for preliminary and permanent injunction against Dr. McCalmont alleging that the parties had entered into a contract of employment (the "Contract") on April 24, 2020, signed electronically by the doctor on May 5, 2020. In the contract, LSUHSC hired Dr. McCalmont as an assistant professor of clinical obstetrics and gynecology ("OBGYN"). The Contract contained a noncompetition clause (the "Clause"), which stated:

> As a condition of your employment, you agree that during your employment with LSU Health Shreveport (except in the course of your employment hereunder), and for a period of two (2) years following termination of your employment with LSU Health Shreveport by either party, for any or no reason, you will not directly or indirectly participate in any manner whatsoever in any business the same as or in competition with LSU Health Shreveport within Caddo or Bossier Parishes. You also agree that, during the term of your employment with LSUHSCS, and for a period of two (2) years thereafter, you will not directly or indirectly attempt to contact, solicit, divert, or appropriate any existing patient or employee of LSU Health Shreveport Department of Obstetrics and Gynecology for yourself or any other entity.

LSU alleged that on October 9, 2020, Dr. McCalmont gave notice of her resignation from LSUHSC. On October 12, 2020, she confirmed her resignation by email to Dr. David Lewis, Dean of LSUHSC, and to

Dr. Charles J. Fox, vice chancellor of Clinical Affairs at LSUHSC.   After her resignation, Dr. McCalmont began practicing with Willis-Knighton Medical Center ("WK") or an entity affiliated with WK in Caddo Parish in the practice of OBGYN.

LSU sent her a cease and desist letter on November 3, 2020, and demanded she cease violation of the Contract.  It claimed that Dr. McCalmont was employed by WK in the same field and in direct competition with the OBGYN departments at LSUHSC, in violation of the Contract.

LSU filed the petition for injunctive relief pursuant to La. R.S. 23:921(H) and prayed that a preliminary injunction be issued prohibiting Dr. McCalmont from practicing OBGYN at WK or anywhere else in Caddo and Bossier Parishes for a period of two years and that a permanent injunction be issued thereafter.  Dr. McCalmont answered interrogatories and denied that she was practicing at WK in the same area of medicine that she practiced at LSUHSC, and she also denied that the Contract prohibited her current employment or that she has ever violated the Contract.  She also filed an opposition to the application for preliminary injunction and argued that LSU cannot meet its heavy burden to preclude her from being employed by WK because: 1) The state cannot enter into or enforce noncompetition agreements; 2) the Clause is overly broad and otherwise fails to comply with Louisiana's statutory requirements for a valid noncompetition agreement and cannot be reformed because the Contract contains no saving clause; and 3) even if the Clause were valid or otherwise enforceable, Dr. McCalmont's employment with WK cannot be considered a violation of the Clause because WK is not a competitor of LSUHSC, which

2

is a "state actor." Dr. McCalmont also argued that her employment with WK does not have an adverse economic impact on LSUHSC since it accepts Medicaid patients, but she does not.

The trial court held a hearing on April 13, 2021. Dr. McCalmont testified that she attended medical school at LSUHSC and completed her residency in OBGYN there in the summer of 2020. Although she was interested in finding a placement out of state after her residency, the COVID-19 pandemic became a factor, and she was unable to be placed elsewhere. She stated she had spoken to Dr. Lewis about a position in Knoxville, Tennessee, and to Dr. Charles Eric McCathran, vice chairman of the department of OBGYN at LSUHSC, about employment in Shreveport. He offered her a job at LSUHSC, and they discussed the length of the Contract. She said she would be present for a year, but it was not discussed that she would have to complete the year. She stated that she received the Contract, read it, understood it and then signed it in May 2020. She stated that her job was to supervise residents in labor and delivery. She also supervised residents in the operating room performing and teaching surgeries such as hysterectomies. Her job also entailed faculty clinic, which she described as seeing patients and giving them the same care that she gave to her patients at WK—prenatal, labor and delivery, and post-partum. She conducted annual exams, practiced preventive medicine, treated pelvic pain, and performed surgery. She worked at free-standing clinics in communities that were not associated with any hospital and accepted Medicaid and free-care patients.

When asked if she considered her employment with WK as breaking the Contract, she replied that she believed her commitment was a "one way

3

street" and that she made it clear to Dr. McCathran that it was not her intention to remain at LSUHSC long-term. She also stated that when she informed LSUHSC that she was leaving, it made her another offer with greater compensation in an effort to persuade her to stay.

She testified that her employment with WK was completely different from that at LSUHSC. She stated that the difference was more than who was paying the bills, although she did state that she does not accept Medicaid patients in her new practice.

Dr. Lewis stated that he was employed by LSUHSC as the dean of the School of Medicine and Chairman of the Department of OBGYN. He said he spoke with Dr. McCalmont about joining the faculty of LSUHSC. He did not speak directly with her about the Contract, but Dr. McCathran, who runs the day-to-day operations of the department, did. Dr. Lewis stated she was hired primarily to be a physician, but also to supervise residents.

Dr. Lewis opined that LSUHSC was in competition with private facilities, such as WK, both in hiring doctors and in acquiring patients. He could not state whether LSUHSC had lost revenue as a result of Dr. McCalmont's resignation.

Dr. Lewis further testified that he had no involvement in the writing of the Contract, although he stated he was aware that it contained the Clause. He also affirmed that he had signed the Contract.

Sheila Faour, chief financial officer of LSUHSC, produced exhibits from the financial information available to her. The purpose of her testimony was to describe the economic injury that occurred as a result of Dr. McCalmont's departure from LSUHSC. She stated that the damages included loss of profits that allegedly would have been attributable to

4

Dr. McCalmont for services rendered on behalf of LSUHSC and additional payments it made for overtime staffing in the amount of $5,200 per month.

Dr. McCathran testified that as vice chairman of the OBGYN Department, he was responsible for making Dr. McCalmont's clinical assignments and taking care of her day-to-day needs as a faculty member. He stated that approximately 2 ½ days a week were dedicated to faculty clinic, and the faculty saw patients one-on-one as they would in private practice.

Dr. McCathran's recollection of the hiring process was different from Dr. McCalmont's. He testified that he knew she was looking for a job and suggested that she could work for LSUHSC. He spoke to Dr. Lewis about her, and Dr. Lewis told him that she would have to commit to a year. When he told Dr. McCalmont about the year commitment, she agreed and stated that it would not be a problem. He stated that it is difficult to find a replacement for someone who quits in the middle of the year because people in residency finish at the same time in July and start their new jobs in July or August.

On cross-examination, Dr. McCathran was asked about the Contract, and he stated that he had nothing to do with the language contained therein. The job description as the professor of clinical OBGYN is to teach residents and medical students and to provide clinical care to patients. He was not aware of any patients calling for Dr. McCalmont specifically or of any patients leaving LSUHSC to go to WK.

Although Dr. McCalmont moved for involuntary dismissal of the preliminary injunction, the trial court rendered judgment, stating it reviewed the record and considered the testimony of Dr. McCalmont, Dr. Lewis,

Ms. Faour, and Dr. McCathran; the exhibits; applicable law; and the arguments. For the reasons stated on the record, the trial court granted the motion for involuntary dismissal and denied LSU's request for a preliminary injunction.[1]

LSU filed an appeal seeking review of the denial of its request for a preliminary injunction based on the Clause.

## DISCUSSION

LSU argues that the Clause is valid and enforceable pursuant to the governing statute and case law. It contends that the trial court required elements of proof that are above and beyond the standard for injunctive relief but were, nevertheless, proven by LSU at the hearing of the matter.

LSU asserts that the Clause contains all the specific elements required for it to be enforceable—the period of noncompetition cannot exceed two years, the geographic region must be defined by reference to specific parishes or municipalities and the employee must agree to refrain from carrying on or engaging in a business similar to that of the employer. It argues that Dr. McCalmont's work at WK is the same as it was at LSUHSC practicing medicine in the OBGYN Department. It contends that both involved treatment of patients by the physician and that it is not necessary that the practice be identical to that of the former employer. It asserts that the Clause is enforceable and not overly broad.

---

[1] At the hearing, the trial court specifically asked, "If I granted your motion, the case would not be dismissed, but the injunction would not be granted; correct.?" LSU's attorney stated, "That's correct." The trial court stated, "All right. So, not a dismissal, it's just a denial of the injunction if I granted your request." However, the judgment states that "for the reasons stated on the record in open court GRANTED Dr. McCalmont's Motion for Involuntary Dismissal thereby denying LSU's request for a preliminary injunction."

LSU also argues that it is not required to show competition between itself and WK and is not required to show economic harm in order to enforce the Contract. Despite this assertion, it contends that it attempted to show the economic harm it suffered through the loss of its physician.

LSU further argues that the record before the trial court supported a prima facie showing that the Clause should have been enforceable on its face, and the trial court erred in denying the preliminary injunction.

Dr. McCalmont argues that the Clause is overly broad, seeks to preclude her from practicing any type of medicine and far exceeds the scope of her employment at LSUHSC. Further, she contends that the Clause has no saving clause. She also points out that LSU is a "state actor," and it cannot enter into or enforce noncompetition agreements. She asserts that her employment with WK cannot be considered a violation of the Clause because WK is not LSUHSC's competitor. She argues that WK actively seeks to assist LSUHSC in its training of medical students and residents. Enforcing the Clause does not protect any valid economic interest of LSUHSC as her employment at WK does not have an adverse economic impact on LSUHSC.

The underlying issue in this case is whether the Clause falls within the exception found in La. R.S. 23:921(C). A trial court has broad discretion in ruling on a preliminary injunction, and its ruling will not be disturbed absent an abuse of discretion. *Powertrain of Shreveport, L.L.C. v. Stephenson*, 49,327 (La. App. 2 Cir. 10/1/14), 149 So. 3d 1274.

La. R.S. 23:921 is the governing statute for noncompetition agreements and has been invoked by both parties in this case. It states, in pertinent part, as follows:

A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

* * *

C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

D. For the purposes of Subsections B, C, E, F, J, K, and L of this Section, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.

* * *

H. Any agreement covered by Subsection B, C, E, F, G, J, K, or L of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement. Any agreement covered by Subsection J, K, or L of this Section shall be null and void if it is determined that members of the agreement were engaged in ultra vires acts. Nothing in Subsection J, K, or L of this Section shall prohibit the transfer, sale, or purchase of stock or interest in publicly traded entities.

Historically, Louisiana has disfavored noncompetition agreements. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So. 2d 294. A covenant not to compete contained in an employment

8

agreement is disfavored in Louisiana because it may function to deprive a person of his livelihood. *W. Carroll Health Sys., L.L.C. v. Tilmon*, 47,152 (La. App. 2 Cir. 5/16/12), 92 So. 3d 1131, *writ denied*, 12-1387 (La. 11/2/12), 99 So. 3d 665. Such a covenant will be enforced only if it meets narrowly drawn criteria. *Id.* La. R.S. 23:921(C) sets forth an exception allowing restrictions on competition. *Id.* This exception must be strictly construed and agreements confected pursuant to this provision must strictly comply with its requirements. *Id.* Such agreements are deemed to be against public policy, except under the limited circumstances delineated by statute. *Paradigm Health Sys., L.L.C. v. Faust,* 16-1276 (La. App. 1 Cir. 4/12/17), 218 So. 3d 1068. A noncompetition agreement may limit competition only in a business similar to that of the employer, in a specified geographic area and for up to two years from termination of employment. *Id.*

Where the actions sought to be enjoined pursuant to a noncompetition agreement do not fall under the statutory exception, or where the noncompete agreement is found to be unenforceable for failure to conform to the statute, the employer is unable to establish that it is entitled to the relief sought. *W. Carroll Health Sys., L.L.C.*, *supra.*

Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. *Paradigm Health Sys., L.L.C.*, *supra.* However, in the event an employee enters into an agreement with his employer not to compete, pursuant to La. R.S. 23:921, and fails to perform his obligation under such an agreement, the

9

court shall order injunctive relief even without a showing of irreparable harm, upon proof by the employer of the employee's breach of the noncompetition agreement. *Id. See* La. R.S. 23:921(H).

To be enforceable as a valid noncompetition clause, the clause in this case had to meet the criteria set forth in La. R.S. 23:921(C), i.e., 1) the employee must agree to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer; 2) within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein; 3) for a time period not to exceed a period of two years from termination of employment. The clause must be strictly construed.

While the Clause at issue in this case defines the parishes and a two-year time period in which Dr. McCalmont should not compete, the language that limits her livelihood as a physician is so overly broad as to be unenforceable. It states she may "not directly or indirectly participate in any manner whatsoever in any business the same as or in competition with LSU Health Shreveport." This restriction, if interpreted as LSUHSC would have us interpret it, would restrict Dr. McCalmont from using her medical license in any field of medicine at all, not just as an OBGYN but as a doctor in any capacity in Caddo or Bossier Parishes.

There were several facts gleaned at the hearing that indicate the Clause is unenforceable. LSUHSC is a teaching hospital, and Dr. McCalmont was hired as a professor to supervise and teach residents to perform all services associated with work as an OBGYN. Although she held clinic and had her own patients for whom she provided care within the specialty, her patients went to LSUHSC because it was, as defined by the

10

legislature, to "be maintained as a teaching institution . . . for the reception and medical and surgical treatment of the indigent and medically underserved." Dr. McCalmont did not solicit patients from LSUHSC and lure them to WK. She does not see patients who have Medicaid coverage at WK. She does not supervise residents at WK. LSUHSC and WK are not in competition with each other because each serves a different purpose. Further, the evidence did not support the theory that her employment with WK has an adverse economic impact on LSUHSC.

We find that LSUHSC failed to prove that it and WK are in competition with each other. It failed to prove that the work Dr. McCalmont performs is similar to that of her work at WK or that she was luring patients from LSUHSC to WK. The statute at issue in this case and the noncompetition clause are to be strictly construed.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of the preliminary injunction in favor of Dr. Lauren E. McCalmont and the denial of LSU's preliminary injunction. Costs of this appeal are assessed to LSU in the amount of $1,264.09.

**AFFIRMED.**

11